431 F.Supp. 1250 (1977)
Mortimer GOODMAN, Guardian of the person and estate of Rachel Goodman (an incompetent), Individually and as member of a class of mental patients who are presently hospitalized and have been hospitalized in the St. Louis State Hospital for mental treatment, Plaintiffs,
v.
Dr. Sadashiv D. PARWATIKAR, Individually, and as acting superintendent of St. Louis State Hospital, Mary H. Sandall, Individually, and as clinical director of St. Louis State Hospital and the St. Louis State Hospital, Defendants.
No. 76-1113C(4).
United States District Court, E. D. Missouri, E. D.
May 27, 1977.
*1251 Louis Gilden, St. Louis, Mo., for plaintiffs.
Daniel P. Card, II, Asst. Atty. Gen., State of Mo., Jefferson City, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon a variety of motions filed by all defendants herein. Plaintiff, as guardian of the person and estate of Rachel Goodman, brought this suit individually and as a class representative, seeking injunctive and monetary relief. Jurisdiction herein is based on 28 U.S.C. §§ 1331 and 1343. Defendants are Dr. Sadashiv D. Parwatikar, Acting Superintendent of the St. Louis State Hospital, Dr. Mary H. Sandall, Clinical Director of the St. Louis State Hospital, and the St. Louis State Hospital. In Count I of the complaint, plaintiff alleges that Rachel Goodman has been a patient at St. Louis State Hospital at various times from 1965 to present; that each time, she was prematurely released; that in 1974 and 1976, she was rejected for treatment; that she suffered physical and mental abuse because she was unable to care for herself; and that she has been placed in boarding houses by defendants although said boarding houses have inadequate medical treatment, custodial care and supervision. Plaintiff alleges that these actions violate constitutional rights under the Eighth Amendment, and the due process and equal protection clauses of the Fourteenth Amendment. In Count II of the complaint, against the same defendants, plaintiff seeks declaratory and injunctive relief claiming that § 202.787, R.S.Mo. (1969) violates the Fourteenth Amendment. This section provides:
The head of the hospital shall discharge any voluntary patient who has recovered or whose hospitalization he determines to be no longer advisable. He may discharge any voluntary patient if to do so would, in the judgment of the head of the hospital, contribute to the most effective use of the hospital in the care and treatment of the mentally ill.
Plaintiff contends that the second sentence of this section violates the due process and equal protection clauses of the Fourteenth Amendment in that the decision to discharge need not be "based on the need to care and treat the mentally ill". Plaintiff further alleges that the criteria "effective use of the hospital" is constitutionally impermissible since "the constitutional right to medical treatment is paramount over effective use of the hospital". Plaintiff further alleges that the statute places total discretion in the head of the hospital without providing standards for the exercise of the same and that therefore the law is vague and overbroad.
From the briefs and documents submitted in support of, and in opposition to, the various motions filed by defendants, it appears that Rachel Goodman was at all times a voluntary patient at the St. Louis State Hospital, although she has since been adjudged incompetent. It further appears that the allegations of physical and mental abuse resulting from Ms. Goodman's inability to care for herself are based on physical and mental abuse suffered not in the Hospital but at times of release. It also appears that Dr. Parwatikar did not become Superintendent of the Hospital until 1976.
Defendants have filed a motion to dismiss the St. Louis State Hospital, contending *1252 that the Hospital is an entity of the state and cannot be sued. Additionally, defendants contend that the Hospital, as an entity of the state, is not a person within the meaning of 42 U.S.C. § 1983, and thus there is no jurisdiction pursuant to 28 U.S.C. § 1343.
In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court reviewed the legislative history of that act which is presently 42 U.S.C. § 1983 and concluded that the word "person" as used in the act did not include municipalities. Since that decision, courts have held that city agencies, and school districts, are not persons within the meaning of § 1983. Harper v. Kloster, 486 F.2d 1134 (4th Cir. 1973); Martin v. Davison, 322 F.Supp. 318 (W.D.Pa.1971); Ransom v. City of Philadelphia, 311 F.Supp. 973 (E.D.Pa.1970). In Bennett v. People of the State of California, 406 F.2d 36 (9th Cir. 1969), cert. denied, 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969), the court held that state agencies are also not persons within the meaning of § 1983. Accord, Sykes v. State of California (Department of Motor Vehicles), 497 F.2d 197 (9th Cir. 1974); Downs v. Department of Public Welfare, 368 F.Supp. 454 (E.D.Pa.1973); Duisen v. Administrator & Staff, Fulton State Hospital No. 1, Fulton, Missouri, 332 F.Supp. 125 (W.D.Mo.1971). In Williford v. People of the State of California, 352 F.2d 474, 476 (9th Cir. 1965), the court noted
A municipal corporation is but a political subdivision of a state, and if a state's political subdivisions are not "persons" under the statute, then neither is the state.
This Court agrees and concludes that the St. Louis State Hospital is not a person within the meaning of § 1983.
Plaintiff, however, has also asserted 28 U.S.C. § 1331 as a jurisdictional basis. Defendants contend that the Eleventh Amendment bars suit against the Hospital. The Court agrees. It is clear that a state may not be sued without its consent. Ex parte New York, 256 U.S. 490, 41 S.Ct. 368, 65 L.Ed. 1057 (1921). In Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it was held that suits against state officials to enjoin violations of constitutional rights were not forbidden by the Eleventh Amendment. See also, Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Holt v. Sarver, 442 F.2d 304 (8th Cir. 1971). The State Hospital, however, is not a state official; it is an arm of the state itself. It is the Court's opinion that the Hospital does not fall within the exception stated in Ex parte Young, supra, and accordingly, must be dismissed from the suit.
Defendants also seek to dismiss the two individual defendants, claiming that they have a qualified governmental immunity thus barring liability for damages; that any damages recovered would be paid from the state treasury and thus the action is barred by the Eleventh Amendment; and that the complaint fails to allege any specific conduct by a particular defendant and that the doctrine of respondeat superior can not apply herein.
Ordinarily, an individual will not be held liable under § 1983 unless he was personally involved in the alleged deprivation of constitutional rights, Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973); Hopkins v. Hall, 372 F.Supp. 182 (E.D.Okl.1974); Duisen v. Administrator & Staff, Fulton State Hospital No. 1, Fulton, Missouri, supra; Downs v. Department of Public Welfare, supra. It appears, however, that when the alleged deprivations are part of a policy or practice, rather than an isolated incident, the requirement of personal involvement diminishes. See Floyd v. Trice, 490 F.2d 1154, 1157 (8th Cir. 1974), a racial discrimination case, in which the court stated:
The specific allegation in the complaint is that E. D. Trice was the school district's chief administrative officer and the more general allegations connecting all of the defendants with the alleged discriminatory policies are sufficient when read together to withstand the objection that the complaint fails to state a claim against him upon which relief can be *1253 granted. Indeed, the Superintendent of Schools is a proper party when it is alleged that the schools which he heads are guilty of discriminatory policies. [cite omitted] This is not to say that a school superintendent is ordinarily responsible for individual acts of discrimination committed by teachers or employees. It is only to say that when discriminatory policies are alleged, the plaintiffs must be given an opportunity to prove discrimination and that the defendant superintendent is wholly or partially responsible for the alleged violations of the Constitution and laws of the United States.
See also, Spence v. Staras, 507 F.2d 554 (7th Cir. 1974); Dewell v. Lawson, 489 F.2d 877 (10th Cir. 1974); Downs v. Department of Public Welfare, supra. Accordingly, the Court concludes that the allegations in the complaint are sufficient to preclude dismissal of the individual defendants for failure to state a claim as to them.
The immunity granted to a public official acting in the course of his duties is qualified. Liability exists
if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the .. [individual] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the ... [individual].... A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith. Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).
See also, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); Harper v. Cserr, 544 F.2d 1121 (1st Cir. 1976). Because of the serious doubts which the Court has with reference to the claimed deprivations of constitutional rights, see discussion infra, the Court can not conclude that the individual defendants knew or should have known that their actions violated constitutional rights. The possibility of malice remains, however. See Harper v. Cserr, supra at 1124-25. Accordingly, the Court will not dismiss the individual defendants on the basis of their asserted qualified immunity.
The claim that the Eleventh Amendment bars this action as to the individual defendants must also fail. In Ex parte Young, supra, the Court held that "the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law". Scheuer v. Rhodes, supra 416 U.S. at 237, 94 S.Ct. at 1687. A prayer for substantial damages does not preclude the suit. Downs v. Department of Public Welfare, supra. The Court therefore concludes that the motion to dismiss the individual defendants is without merit.
Defendants have also filed motions to dismiss both Counts I and II of plaintiffs' complaint. The basis for plaintiffs' claims, in both counts, is the assertion of a right to treatment. A right to treatment has been recognized in those situations in which an individual is involuntarily committed, on the grounds that "treatment ... [has] to be provided as the quid pro quo [that] society ... [has] to pay as the price of the extra safety it derived from the denial of individuals' liberty". Wyatt v. Aderholt, 503 F.2d 1305, 1312 (5th Cir. 1974) [court bases this decision on its decision in Donaldson v. O'Connor, 493 F.2d 507 (5th Cir. 1974); that decision, however, was held to be without precedential value in O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975)]. See also, Lessard v. Schmidt, 349 F.Supp. 1078 (E.D.Wis. 1972), vacated on other grounds, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) (dicta); Lynch v. Baxley, 386 F.Supp. 378 (M.D.Ala.1974); Welsch v. Likins, 373 F.Supp. 487 (D.C.Minn.1974), aff'd, 525 F.2d 987 (8th Cir. 1975); Morales v. Turman, 364 F.Supp. 166 (E.D.Tex.1973); Stachulak v. *1254 Coughlin, 364 F.Supp. 686 (N.D.Ill.1973); Martarella v. Kelley, 349 F.Supp. 575 (S.D. N.Y.1972); Inmates of the Boys' Training School v. Affleck, 346 F.Supp. 1354 (D.C.R. I.1972). Rachel Goodman, however, was a voluntary patient. In Harper v. Cserr, supra, plaintiff's wife had been a voluntary patient who hung herself while at the hospital. She had had a history of suicide attempts. Plaintiff alleged that defendant's failure to supervise her or to take any steps to prevent the suicide violated the Eighth and Fourteenth Amendments. The Court allowed the suit to proceed on the claim of failure to supervise but rejected any claim of right to treatment.
The question of whether or not plaintiff has a federal cause of action at all is not free from doubt . . .. First, we reject the argument that plaintiff can claim for the deceased a "right to treatment" under such cases as Wyatt v. Aderholt, 503 F.2d 1305, 1312 (5th Cir. 1974); see Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451, 453 (1966); Note, Right to Treatment, 86 Harv.L.Rev. 1282 (1973). Marilyn Harper was a voluntary patient and it is not suggested that if she or her legal or natural guardian wished her to leave Medfield State Hospital, the state would have detained her assuming usual procedures were followed.... The rationale of the above "right to treatment" cases is that treatment must be afforded in order to legitimate the inmate's continued detention which (given the nature and purpose of civil commitment proceedings) might otherwise amount to a deprivation of liberty without due process or the infliction of cruel and unusual punishment within the eighth amendment. [citations omitted] Here, however, since the deceased was not involuntarily committed, such a quid pro quo analysis is not germane, and since she was free to leave at any time, there is no question of an "indefinite detention" which, minus treatment, becomes cruel and unusual punishment. Id. at 1122-23.
The Court agrees with this position and concludes that plaintiffs' claim of right to treatment must fail. But cf., Inmates of the Boys' Training School v. Affleck, supra, (plaintiffs include those voluntarily committed by parents; court does not distinguish between voluntary and involuntary commitment); New York State Association for Retarded Children, Inc. v. Rockefeller, 357 F.Supp. 752 (E.D.N.Y.1972) (court mentions that 27% of hospital's residents are voluntary patients); Renelli v. Department of Mental Hygiene, 73 Misc.2d 261, 340 N.Y. S.2d 498 (1973) (individual had been voluntarily placed in hospital by parents).
Since both counts of plaintiffs' complaint are premised on the claim of right to treatment, the Court will dismiss the complaint in its entirety for failure to state a claim.