570 F.2d 801
 Mortimer GOODMAN, Guardian of the person and Estate of
Rachel Goodman (an incompetent), Individually, and as a
member of a class of mental patients who are presently
hospitalized and have been hospitalized in the St. Louis
State Hospital for mental treatment, Appellant,
v.
Dr. Sadashiv D. PARWATIKAR, Individually, and as Acting
Superintendent of St. Louis State Hospital, Mary H. Sandall,
Individually, and as Clinical Director of St. Louis State
Hospital and the St. Louis State Hospital, Appellees.
 No. 77-1505.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1977.
Decided Feb. 17, 1978.
 
 Louis Gilden, St. Louis, Mo., for appellant.
 Daniel P. Card, II, Asst. Atty. Gen., Jefferson City, Mo., for appellees; John D. Ashcroft, Atty. Gen., Jefferson City, Mo., on the brief.
 Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 This suit was brought by Mortimer Goodman, as guardian of the person and estate of Rachel Goodman, individually and as a class representative of all mental patients in the St. Louis State Hospital.[1] Plaintiff is seeking injunctive and monetary relief. In Count I of this section 1983 action plaintiff contends that Rachel Goodman received constitutionally inadequate medical treatment. Count II is based on the allegation that the Missouri voluntary discharge statute, Mo.Ann.Stat. § 202.787 (Vernon), is unconstitutional. The defendants remaining on this appeal are Dr. Sadashiv D. Parwatikar, acting superintendent of the St. Louis State Hospital and Dr. Mary H. Sandall, clinical director of St. Louis State Hospital.
 
 
 2
 On February 8, 1977, defendants filed motions to dismiss both counts of plaintiff's complaint for failure to state a claim upon which relief could be granted. Both parties filed affidavits and suggestions in support of their positions. On May 27, 1977, the district court[2] granted the defendants' motions to dismiss plaintiff's complaint. Goodman v. Parwatikar, 431 F.Supp. 1250 (E.D.Mo.1977). We reverse and remand.
 
 
 3
 When affidavits and documents are submitted pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim, the motion to dismiss is treated as a motion for summary judgment.[3] See Evans v. McDonnell Aircraft Corp., 395 F.2d 359 (8th Cir. 1968). Thus, the narrow issue before this court is whether the district court erred in granting what was in effect the defendants' motion for summary judgment.
 
 
 4
 This court has repeatedly recognized "that summary judgment is an extreme remedy and one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207 (8th Cir. 1976); Percival v. General Motors Corp., 539 F.2d 1126 (8th Cir. 1976); Windsor v. Bethesda General Hospital, 523 F.2d 891 (8th Cir. 1975)." Bellflower v. Pennise, 548 F.2d 776, 777 (8th Cir. 1977).
 
 
 5
 The crucial question in this case is whether there is a genuine dispute as to some material fact. "In passing upon a motion for summary judgment the court is required to view the facts in the light most favorable to the party opposing the motion and to give to that party the benefit of reasonable inferences to be drawn from underlying facts. Adickes v. S. H. Kress & Co., 398 U.S. 144, 153-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Percival v. General Motors Corp., supra." Robert Johnson Grain Co. v. Chemical Interchange Co., supra, 541 F.2d at 210. "Unless the pleadings and supporting documents disclose beyond any doubt the absence of a genuine issue of fact, summary judgment should not be entered." Evans v. McDonnell Aircraft Corp., supra, 395 F.2d at 362.
 
 
 6
 Accordingly, we have examined the contentions of the parties to determine whether summary judgment was properly granted in favor of the defendants. After a careful review of the meager record before us we are convinced that there are disputes of material fact and, thus, this is not a proper case for the imposition of summary judgment.
 
 
 7
 St. Louis State Hospital is a facility operated under the aegis of the Missouri Department of Mental Health to provide care and treatment for the mentally ill. Plaintiff is the father and legal guardian of Rachel Goodman. He was appointed legal guardian of her person and estate by the probate court of St. Louis County on November 24, 1976, at which time Rachel was adjudicated incompetent.
 
 
 8
 Since 1965 Rachel has been discharged and readmitted as a patient in the hospital at least eight times. On numerous other occasions she has eloped from the hospital and has been released to half-way houses, usually with allegedly disastrous results.
 
 
 9
 The district court specifically found: "From the briefs and documents (affidavits) submitted in support of, and in opposition to, the various motions filed by defendants, it appears that Rachel Goodman was at all times a voluntary patient at the St. Louis State Hospital, although she has since been adjudged incompetent." Goodman v. Parwatikar, supra, 431 F.Supp. at 1251. Since the district court found that Rachel was at all times a voluntary patient, it held that plaintiff's claim of a right to treatment must fail. Id. at 1254. The district court stated: "Since both counts of plaintiff's complaint are premised on the claim of right to treatment, the Court will dismiss the complaint in its entirety for failure to state a claim." Id. However, the plaintiff's affidavits reveal, and this point is not contested by defendants, that Rachel was an involuntary patient on at least two separate occasions.[4]
 
 
 10
 This court has held that mentally retarded persons judicially committed to state institutions have a constitutional right to treatment. Welsch v. Likins, 550 F.2d 1122, 1125 (8th Cir. 1977), approving Welsch v. Likins, 373 F.Supp. 487 (D.Minn.1974). The due process clause compels minimally adequate treatment be provided for involuntary patients in state institutions. See Welsch v. Likins, supra, 550 F.2d 1122. Cf. Finney v. Arkansas Board of Correction, 505 F.2d 194 (8th Cir. 1974). A dispute of fact does exist as to whether Rachel was at all times a voluntary patient. This dispute involves what is obviously a material fact.
 
 
 11
 The district court also found: "It further appears (from the briefs and affidavits) that the allegations of physical and mental abuse resulting from Ms. Goodman's inability to care for herself are based on physical and mental abuse suffered not in the Hospital but at times of release." Goodman v. Parwatikar, supra, 431 F.Supp. at 1251.
 
 
 12
 However, in plaintiff's affidavit it is alleged that on September 12, 1976, Rachel, while an in-patient at the hospital, was beaten by another patient and taken to City Hospital. Although there is nothing in the Constitution which requires the state of Missouri to admit all patients seeking treatment, once Rachel was admitted as a patient, voluntary or involuntary, she had a constitutional right to a basically safe and humane living environment. See Harper v. Cserr, 544 F.2d 1121 (1st Cir. 1976); New York State Ass'n for Retarded Children, Inc. v. Rockefeller, 357 F.Supp. 752 (E.D.N.Y.1973). The state has a duty to provide a humane living environment which includes a duty to protect inmates from assault by fellow inmates and staff, which if callously disregarded may constitute a violation of civil rights. Harper v. Cserr, supra; Spence v. Staras, 507 F.2d 554 (7th Cir. 1974); Welsch v. Likins, supra, 373 F.Supp. at 502-03; New York State Ass'n for Retarded Children, Inc. v. Rockefeller, supra.
 
 
 13
 If plaintiff can establish at trial a sufficient helplessness on the part of Rachel and a deliberate indifference toward Rachel's serious medical needs, including protection from assault, on the part of those caring for her, then plaintiff will have proved that she was denied her constitutional right to a humane and safe living environment while confined under state authority. Harper v. Cserr, supra, 544 F.2d at 1123-24; Spence v. Staras, supra, 507 F.2d at 557; Welsch v. Likins, supra, 373 F.Supp. at 502-03. See also Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("(D) eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."); Freeman v. Lockhart, 503 F.2d 1016 (8th Cir. 1974). If plaintiff proves that either defendant "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of (Rachel), or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to (Rachel)," plaintiff would be entitled to damages from that defendant. O'Connor v. Donaldson, 422 U.S. 563, 577, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975), quoting from Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).
 
 
 14
 Plaintiff has alleged in his complaint "(t)hat defendants were aware that Rachel Goodman needed hospitalization for her mental illness, that she could not care for herself, that her mental condition was of such severity that care and treatment in a hospital was necessary, and that her release by defendants presented a danger to her." He further alleged "(t)hat the actions of the defendants were willful, wanton and malicious * * *."
 
 
 15
 Jurisdiction of the district court in this case is based upon the claim of a violation of civil rights. Plaintiff does not claim that the district court would have jurisdiction to hear this case if it were only a malpractice action. For plaintiff to establish a claim cognizable under section 1983, he must show that defendants, under color of state law, deprived Rachel Goodman of a right secured by the United States Constitution; and to recover damages he must also establish the requisite knowledge or malice of the defendants.
 
 
 16
 We conclude that while section 1983 does not create a general federal law of torts, the complaint and affidavits could conceivably encompass a federal cause of action for damages should plaintiff be able to establish a malicious or wanton disregard of duty by defendants as opposed to a mere negligent failure to afford proper care and treatment. Therefore, the district court should not have granted defendants' motion for summary judgment.
 
 
 17
 On remand, the district court may eventually conclude, after more complete development of the facts, that plaintiff's claim is only one of negligence or malpractice at most. In such event, section 1983 would not afford relief. Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, on the record before us, we are unable to say that if plaintiff is able to prove the allegations in his complaint that this case fails to cross the line between tort and civil rights action.
 
 
 18
 In Count II plaintiff claims that the part of the Missouri voluntary discharge statute, Mo.Ann.Stat. § 202.787 (Vernon), which reads, "He (head of the hospital) may discharge any voluntary patient if to do so would, in the judgment of the head of the hospital, contribute to the most effective use of the hospital in the care and treatment of the mentally ill," is unconstitutional. Plaintiff claims it is unconstitutional because it confers such arbitrary and uncontrolled discretion upon the head of the hospital that it enables him to deny a patient his constitutional right to treatment and because it discriminates between patients at the mental institution on the irrational basis of whether they are voluntary or involuntary.
 
 
 19
 However, we do not reach this constitutional issue because it is not necessary for the resolution of the conflict before us.[5] It does not appear from the record that Rachel has ever been discharged or denied admission on the basis of this statute. We are unable to say that it is alleged in the complaint or affidavit filed that Rachel or anyone else who needs care was discharged solely because there were not suitable accommodations and other individuals needed the treatment worse. Furthermore, defendant Parwatikar filed an affidavit with the district court in which he stated that Rachel is currently in need of treatment and there is no intention to discharge her pursuant to section 202.787 "unless and until it is determined that she is no longer in need of treatment from this facility or her discharge is requested by her court-appointed guardian." Thus, we are not presented with a factual situation in which the validity of the statute is actually involved in an adversarial context. See Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).
 
 
 20
 The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 At this stage maintainability as a class action has not yet been determined by the district court
 
 
 [2]
 The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri
 
 
 [3]
 Fed.R.Civ.P. 12(b) provides in part:
 If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
 
 
 [4]
 On July 7, 1965, Rachel Goodman was committed to St. Louis State Hospital for an indeterminate period of time by court order upon a finding that she "is mentally ill and is in need of custody, care or treatment in a mental hospital, and because of said illness, lacked sufficient insight or capacity to make responsible decisions with respect to such hospitalization." Gilden affidavit, Exhibit L
 On May 13, 1970, she was committed to the St. Louis State Hospital by court order for the same reasons as her commitment in 1965. Gilden affidavit, Exhibit M.
 
 
 [5]
 We do note that this section should not be read out of context from the other sections in the same chapter. For example, Mo.Ann.Stat. § 202.790 (Vernon), allows the head of the hospital to block the release of any voluntary patient by commencing proceedings for judicial hospitalization when he believes it is unsafe for the patient or the community to have the patient released. Under Mo.Ann.Stat. § 202.783 (Vernon), the head of a public hospital is required to "admit for observation, diagnosis, care, and treatment any individual who is mentally ill or has symptoms of mental illness and who, being sixteen years of age or over, applies therefor, * * * ." Furthermore, Mo.Ann.Stat. § 202.840 (Vernon), provides: "Every patient shall be entitled to humane care and treatment, and, to the extent that facilities, equipment and personnel are available, to medical care and treatment in accordance with the highest standards accepted in medical practice."