Stanley Herbert NATHANSON,
Appellant,

v.

UNITED STATES of America; Allan Campbell, Individually and in his capacity as Executive Director of the United States Civil Service Commission; Clifford Alexander, Jr., Individually and in his official capacity as Secretary of the United States Army; Lieutenant General John W. Morris, Individually and in his official capacity as Chief Engineer, U. S. Army Corps of Engineers; Major General Richard L. Harris, Individually and in his official capacity as North Central Division Engineer, U. S. Army Corps of Engineers; Colonel Forrest T. Gay, III, Individually and in his official capacity as St. Paul District Engineer, U. S. Army Corps of Engineers; William Goetz, Individually and in his official capacity as Chief, Construction-Operations Division, St. Paul District, U. S. Army Corps of Engineers; and William D. Parsons, Individually and in his official capacity as Chief, General Regulatory Branch, Construction-Operations Division, St. Paul District, U. S. Army Corps of Engineers, Appellees.

No. 79–2013.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 1, 1980.

Decided Aug. 12, 1980.

Stanley H. Nathanson, pro se.

Michael H. Ferring, Counsel, Corps of Engineers and Thomas Berg, U. S. Atty. and John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, and HEANEY and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

Stanley Nathanson, a law school graduate, was, until May 12, 1978, employed as an Applications Review Specialist by the United States Army Corps of Engineers in St. Paul, Minnesota. On May 12, 1978, his employment was terminated without a prior hearing on the grounds that he had shown an inability to accept guidance and direction from supervisory personnel, had failed to properly follow administrative guidelines and operating procedures and had demonstrated poor judgment in coordinating his activities with other state and federal agencies.

After an unsuccessful appeal to the Federal Employee Appeals Authority of the United States Civil Service Commission, Nathanson filed this action in the district court alleging (1) that the reasons given for his termination have been made a part of his permanent personnel file and are detrimental to his good name and personal and professional reputation and that he was therefore entitled to a pretermination hearing, and (2) that his termination was in violation of the First Amendment because it was in retaliation for his expression of certain personal views, specifically his support for and attempts to enforce the National Environmental Policy Act (NEPA) and the Federal Water Pollution Control Act (FWPCA).

The district court granted defendants' motion for summary judgment, and Nathanson appeals.

### The First Amendment Claim

In his complaint, Nathanson alleged that his termination was in retaliation for his expression of disagreement with and his maintenance of a personal opinion contrary to defendant William D. Parsons, Chief,

General Regulatory Branch, Construction-Operations Division, St. Paul District, United States Army Corps of Engineers.

The only evidence presented by either party with respect to the details of the controverted speech and its effect on Nathanson's employment was Nathanson's response to the Government's interrogatories.[1] The general nature of the differences of opinion involved here was expressed by Nathanson as follows:

It is, however, common knowledge within the Branch that I personally view NEPA and the Federal Water Pollution Control Act (FWPCA) as enacted for the purposes of insuring that Environmental interests such as the preservation of aquatic habitat and water quality be given serious consideration in Federal Government Action, and that my administrative role as a Processor should be to insure that these interests represented by the various coordinating agencies receive full and fair consideration with the other interests and that the permit decisions for which I am primarily responsible reflect that consideration.

It is also common knowledge within the Branch that I am personally concerned that we, as an agency, administer the permit program in as timely and uniform a fashion as possible.

Branch Chief Parsons apparently does not share in these political views since he entertains a hostile posture toward our Environmental Branch and the U. S. Fish & Wildlife Service and seems to hold an inconsistent attitude towards projects with similar impacts.

Specific instances of the differing opinions were described by Nathanson:

I recall two instances in which I expressed an opinion different from Defendant Parsons which provided the provocation for his action to terminate my employment.

During a series of discussions on the need for a Corps of Engineers permit for the Wilkins-Otter Tail Ditch No. 2 Project, Defendant Parsons contended that it was proper for the Corps to enter into a special arrangement with the Engineering firm handling the project which avoided the standard review procedures proscribed by the regulations, while I expressed the opinion that such agency action was contrary to what was expected, to insure careful consideration of the environmental impacts of projects within its jurisdiction. After making my comment, I was excluded from any final discussions on the matter.

During a series of discussions on the disposition of a permit application by the Metropolitan Airport Commission to construct a storm water treatment system at Twin Cities International Airport, Defendant Parsons contended that it was a "good" project and despite information passed on by the U. S. Fish & Wildlife Service that the Commission had failed to comply with the requirements of another Federal Environmental agency, while I expressed the opinion that it was ethically improper to proceed with granting the permit when we knew the Commission was in violation of a Federal Law, that we were sworn to uphold the Laws which included the avoidance of any actions which would tend to undermine them, and further that our role as processors required that we reserve judgment until the Public Interest Review has been completed. After making these remarks, the project was transferred to another processor.

The district court held that Nathanson was not terminated in violation of his First Amendment rights. It concluded that Nathanson's maintenance of the political views for which he was allegedly discharged would be likely to interfere with the proper performance of his duties and that the interests of the government in efficient operation outweighed Nathanson's interest in maintaining the views in question. Finally,

---

1. The Government posed interrogatories asking Nathanson to explain the nature of personal opinions he held that were different from those of Parsons and that caused Parsons to retaliate. The Government also asked Nathanson to give specific instances of those differing personal opinions.

the court concluded that the views in question were not "political" or "personal" speech but constituted speech in furtherance of the proper discharge of Nathanson's duty and therefore were not protected by the First Amendment.

■ A public employee does not forfeit his protection against governmental abridgment of freedom of speech by virtue of his employment. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). That protection extends to private expressions to one's employer as well as to public expressions. *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

■ The free speech rights of public employees are not absolute but must be balanced with the need for orderly and efficient operation of the government agency involved. *Pickering v. Board of Educ., supra*, 391 U.S. at 568–569, 88 S.Ct. at 1734–35. In *Pickering*, which dealt with whether a teacher's public statements critical of the School Board were protected by the First Amendment, the Court weighed the need for maintenance of discipline by immediate superiors or harmony among co-workers; whether plaintiffs' employment relationship with the defendant was the kind of close working relationship for which personal loyalty and confidence were necessary to proper functioning; and whether the plaintiff's statements impeded the proper performance of his duties or interfered with the regular operation of the school generally. As the Court pointed out in *Givhan v. Western Line Consol. School Dist., supra*, 439 U.S. at 415 n.4, 99 S.Ct. at 696 n.4:

> Although the First Amendment's protection of government employees extends to private as well as public expression, striking the *Pickering* balance in each context may involve different considerations. * * * Private expression * * * may in some situations bring additional factors to the *Pickering* calculus. When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered.

■ Once an employee has shown his constitutionally protected speech played a substantial role in the employer's decision to discharge him, the burden is on the employer to show "by a preponderance of the evidence that it would have reached the same decision * * * even in the absence of the protected conduct." *Mt. Healthy City Bd. of Educ. v. Doyle, supra*, 429 U.S. at 287, 97 S.Ct. at 576.

■ From these principles, it is clear that Nathanson's right to express the views in question was constitutionally protected, unless his expression of those views hindered the efficient operation of the Corps of Engineers to an extent sufficient to warrant denial of First Amendment protection. The grant of summary judgment would be appropriate if one of two alternatives were satisfied: (1) if the uncontroverted facts established that Nathanson's expression of his personal views hindered the operation of the Corps of Engineers or (2) in the absence of such uncontroverted facts, if Nathanson's position were so sensitive that the speech in question could be held as a matter of law to be of such a nature as to hinder the operation of the Corps of Engineers. Neither alternative has been satisfied here and summary judgment was inappropriate.

■ The uncontroverted facts establish only that Nathanson viewed himself as an advocate for environmental concerns and expressed his disagreement with his superior as to the handling of certain matters in relation to those environmental concerns. The Government filed no affidavits dealing with the First Amendment issue when it filed its motion for summary judgment. It is not at all clear from the record that Nathanson's advocacy in any way hindered his performance of his duties. For example, the defendants do not contend that Nathanson refused to carry out an order on the basis of his environmental views or that his expression of his views created dissen-

sion or confusion which affected the Corps' work. There simply is no evidence, other than Nathanson's description of the speech in controversy, showing the effect of Nathanson's expression of views on the operation of the Corps.

■ The record likewise fails to provide support for the theory that Nathanson's job was so sensitive that the views he expressed would necessarily hinder the functioning of the Corps of Engineers. Nathanson's duties, set out at length by the district court in its memorandum opinion, included reviewing and evaluating applications for permits under § 10 of the River and Harbors Act of 1899 and § 404 of the Federal Water Pollution Control Act Amendments of 1972, reviewing and evaluating applications for permits received from government agencies, utility companies, businesses and individuals, determining the laws applicable to permit applications, and maintaining close contact with Office of Counsel on matters involving questionable interpretation of the laws. It seems clear that Nathanson's duties involved the application of environmental protection laws and that a necessary aspect of those duties would involve the expression of his opinion with respect to application of those laws.

Summary judgment is "an extreme remedy and one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Goodman v. Parwatikar*, 570 F.2d 801, 803 (8th Cir. 1978) (quoting *Bellflower v. Pennise*, 548 F.2d 776, 777 (8th Cir. 1977)); *see Williams v. Evangelical Retirement Homes*, 594 F.2d 701 (8th Cir. 1979). This is not such a case.

### The Due Process Claims

Nathanson alleged in his complaint that the allegations forming the basis for his termination, which were made a permanent part of his federal employment file, were detrimental to his good name and personal and professional reputation, and that he therefore should have been given a hearing to refute those allegations.

This Court in *Owen v. City of Independence, Mo.*, 589 F.2d 335, 338 n.1 (8th Cir. 1978), *vacated and remanded on other grounds*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), noted that the Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann, supra*, established the rule that

a public employee, in the context of being terminated under circumstances imposing a stigma on his professional reputation and impairing his ability to find future employment, [is] entitled to notice and a name-clearing hearing.

The issue is whether the reasons given for Nathanson's termination impose such a stigma. Those reasons were as follows:

This action is being taken as a result of your duty performance. It is my judgment that you have failed to demonstrate the necessary qualifications for successful performance in this position. Specifically, you have shown an inability to accept guidance and direction from supervisory personnel, you have failed to properly follow administrative guidelines and operating procedures, and you have demonstrated poor judgment in coordinating your activities with other state and federal agencies.

This Court has held that allegations similar to those involved here are not the type of stigmatizing charges which would preclude a person from obtaining future employment. *Elkin v. Roudebush*, 564 F.2d 810, 813 (8th Cir. 1977) (charge of unsatisfactory performance as a nurse and with difficulties with interpersonal relationships). Other courts have agreed. *Ventetuolo v. Burke*, 596 F.2d 476, 483 (1st Cir. 1979) (charges of insubordination, hostility toward the director and complete refusal to accept the commands of the director); [2] *Stretten v. Wadsworth Veterans Hosp.*, 537

---

**2.** For a more extensive list of cases, *see Ventetuolo v. Burke*, 596 F.2d 476, 484 n.13 (1st Cir. 1979).

F.2d 361, 366 (9th Cir. 1976) (charge of incompetence and inability to get along with co-workers).[3]

The requisite stigma has generally been found in cases involving charges of dishonesty, drug usage or grave character defects. *Johnson v. Rogers*, 621 F.2d 300 (8th Cir. 1980) (plaintiff associated with an attempted illegal entry); *Rodriguez de Quinonez v. Perez*, 596 F.2d 486 (1st Cir. 1979) (bank directors discharged for dishonesty); *Churchwell v. United States*, 545 F.2d 59, 62 (8th Cir. 1976) (nurse charged with misuse of drugs and lying to cover up drug misuse); *Velger v. Cawley*, 525 F.2d 334 (2d Cir. 1975), *rev'd on other grounds sub nom. Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (policeman charged with attempting suicide by putting a revolver to his head); *but see Greenhill v. Bailey*, 519 F.2d 5 (8th Cir. 1975) (distinguishing lack of intellectual ability from performance).

In light of the case law, the district court properly granted the defendants' motion for summary judgment on this issue. The reasons given for Nathanson's termination were not the type that would impose a stigma on Nathanson's reputation foreclosing his future employment.

Nathanson also alleges on appeal that he possessed a property right in continued employment and that he therefore could not be dismissed without a hearing. Because Nathanson did not raise this issue in the proceedings below, this Court need not consider it.

The grant of summary judgment in favor of defendants on Nathanson's due process claims is affirmed, but the grant of summary judgment with respect to the First Amendment claim is reversed and the cause is remanded to the district court.

**3.** As the Court stated in *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir. 1976):

> [A] charge which infringes one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and dignity as an individual and, as a consequence is likely to have severe repercussions *outside* of professional life. Liberty is not infringed by a label of incompetence, the repercussions of which primarily affect professional life, and which may well force the individual down one or more notches in the professional hierarchy. [Emphasis in original.]