**Madie E. BROWN and Vera M. Walker, Plaintiffs,**

**v.**

**Donald E. WILLIAMSON, in his official capacity as Commissioner of the State of Alabama Department of Health and the State of Alabama Department of Public Health, Defendants.**

No. Civ.A.00–A–1713–N.

United States District Court, M.D. Alabama, Northern Division.

March 19, 2001.

---

Ira B. Colvin, Reform, AL, for Madie E. Brown, Plaintiff.

Patricia E. Ivie, G. Gregory Locklier, Alabama Department of Public Health, Montgomery, AL, for Don Williamson and State of Alabama Department of Health, Defendants.

## *MEMORANDUM OPINION*

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

This cause is before the court on a Motion to Dismiss (doc. # 5) for want of jurisdiction and for failure to state a claim upon which relief can be granted filed by Donald E. Williamson ("Williamson") and the State of Alabama Department of Public Health ("ADPH") (collectively "Defendants") on January 18, 2001, as well as on a conditional Motion to Amend Complaint to Add Parties (doc. # 8) filed by Madie E. Brown and Vera M. Brown (collectively "Plaintiffs") on February 12, 2001. Both motions came under submission on receipt of Defendants' Reply supporting dismissal and opposing amendment on February 20, 2001.

For the reasons stated below, Defendants' Motion to Dismiss is due to be granted, and Plaintiffs' conditional Motion to Amend Complaint to Add Parties is due to be denied as moot.

## II. *STANDARDS OF REVIEW*

### A. *Motion to Dismiss for Failure to State a Claim*

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) (citation omitted) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). In deciding a motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *See Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. This standard imposes an "exceedingly low" threshold on the non-moving party in order to survive a motion to dismiss for failure to state a claim in order to reflect the liberal pleading requirements set forth in the Federal Rules of Civil Procedure. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

### B. *Motion to Dismiss for Lack of Jurisdiction*

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." A "facial attack" on the complaint requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990) (per curiam); *Hayden v. Blue Cross & Blue Shield of Alabama,* 855 F.Supp. 344, 347 (M.D.Ala.1994). A "factual attack," on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings. *See Lawrence,* 919 F.2d at 1529. Under a factual attack, the court may hear conflicting evidence and decide the factual issues that determine jurisdiction. *See Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1243 (11th Cir.1991). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence,* 919 F.2d at 1529 (citation omitted).

### C. *Motion to Amend*

Under Rule 15, a party may amend the party's pleading "once as a matter of course" before a responsive pleading is served. Fed.R.Civ.P. 15(a). Subsequent pleading amendments may be made "only by leave of court or by written consent of the adverse party." *Id.* Leave to amend shall be "freely given when justice so requires." *Id.* "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant. repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.— the leave sought should as the rules require be 'freely given.'" *Loggerhead Turtle v. County Council of Volusia County, Florida,* 148 F.3d 1231, 1255 (11th Cir. 1998) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

## III. *ALLEGATIONS OF FACT & SUBMISSIONS*

Plaintiffs are currently residents of Sansing Country Home ("Sansing") near Carrollton, Alabama. Sansing is an Assisted Living Facility licensed and regulated by the State of Alabama.[1] Plaintiff

---

1. Defendant ADPH is the state agency respon-      sible for licensing and regulating health care

Madie E. Brown is eighty-two years old and is afflicted with Alzheimer's, osteoporosis, diabetes, and a speech impairment. Plaintiff Vera M. Walker is ninety-two years old and is afflicted with pernicious anemia, angina, congestive heart failure, and gout. Plaintiff Vera M. Walker also suffers from sporadic bouts of depression and the effects of a stroke.

Plaintiffs require assistance with bathing, dressing, grooming, oral hygiene, and medication administration and currently receive such assistance at Sansing. Because Plaintiffs are unable to self-medicate, Sansing provides the services of a registered nurse to administer medicines in accordance with the Rules of Alabama State Board of Health Division of Licensure and Certification. Plaintiffs "function and thrive in the assisted living facility atmosphere and ha[ve] done so since [their] admission." *See* First Amended Complaint at ¶ 1 (referencing Complaint at ¶¶ 9 & 14).[2]

During the last several years, Defendants began to reevaluate their rules and regulations pertaining to the Assisted Living Facility industry. Defendants faced an acute problem related to the admission of individuals with severe dementia into Assisted Living Facilities, despite the existence of explicit regulatory language prohibiting their admission and continued stay in such facilities. By the year 2000, hundreds if not thousands of residents with severe dementia had been admitted into Alabama Assisted Living Facilities. Strict enforcement of the Defendants' regulations would have required discharge of all of these residents. Defendants considered such a massive involuntary discharge to be

an unacceptable option, however, because there were "a grossly insufficient number of appropriate alternative placements available" to these patients. Harris Aff. at ¶ 3. Nevertheless, Defendants remained deeply concerned about the consequences of residents with "advanced dementia and complex care needs residing in assisted living facilities when state rules for treatment and care were insufficient to provide for the health and safety of such residents." *Id.* at ¶ 4. This concern, in part, stemmed from numerous incidents involving injury, abuse, and even death within Alabama's Assisted Living Facilities.

In July of 2000, Governor Siegelman and Defendant Williamson convened a meeting of various interested parties to discuss reform of the rules and regulations governing Assisted Living Facilities. After meeting for two days, the participants unanimously endorsed a set of proposed amendments to the Rules of Alabama State Board of Health Division of Licensure and Certification ("the new Rules"). After additional non-substantive changes, the new Rules went into effect on November 6, 2000.

The most significant change contained in the new Rules involved the bifurcation of the assisted living industry into two groups based upon the level of care to be provided. Facilities are now labeled as either "Assisted Living Facilities" or "Specialty Care Assisted Living Facilities." Specialty Care Assisted Living Facilities are subject to more stringent requirements than are Assisted Living Facilities. The new Rules also modify the standards individuals must meet to be qualified to reside in

---

facilities within Alabama, including Assisted Living Facilities. *Ala.Code* §§ 22–21–20 through 22–21–33. Defendant Williamson is Alabama's State Health Officer.

2. Plaintiffs' First Amended Complaint is substantively identical to Plaintiffs' original Complaint and was only filed to remedy clerical deficiencies in the original Complaint. Plaintiffs' counsel is reminded to observe Local Rule 15.1 in future filings with this court. *See* M.D.Ala. LR 15.1.

an Assisted Living Facility. Specifically, *Ala.Admin.Code* § 420-5-4.08(5)(f) sets forth the following standard for determining whether an individual is disqualified from living in an Assisted Living Facility:

A resident who is severely cognitively impaired as defined below shall be promptly transferred to an appropriate setting unless such resident's severe cognitive impairment is a temporary condition or unless the resident has been admitted to a licensed hospice program because of some condition other than dementia. For the purposes of this subsection, a resident shall be deemed to be severely cognitively impaired if he or she does not recognize his or her name, or if he or she does not understand and cannot be trained to understand the unit dose medication system in use by the facility.

*Id.*

Plaintiffs believe that this definition of "severely cognitively impaired" is broad enough to preclude them from residing at the Sansing Assisted Living Facility and that the new Rules will require Plaintiffs to be put in a facility which is not the least restrictive placement appropriate to their needs. Accordingly, Plaintiffs have brought suit alleging that the Defendants, in adopting these new Rules, violated Plaintiffs' rights under the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA") and their rights to procedural due process under the Fourteenth Amendment to the United States Constitution. *See* 28 C.F.R. § 35.130(d); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). Plaintiffs seek declaratory and injunctive relief.

Since the new Rules became effective on November 6, 2000, Defendant ADPH has convened a second group of interested parties to undertake a "more thorough review of the assisted living rules." Harris Aff. at ¶ 10. Defendants represent that this group will conclude its work soon and that "further refinements to the assisted living rules are imminent." *Id.* Given that the new Rules are currently in a state of flux, Defendants have "embarked on a path of very limited enforcement of the new rules." *Id.* It is undisputed that the Plaintiffs in this case have not been declared ineligible for Assisted Living Facility residence by the Defendants. Moreover, no enforcement action has been taken against the Plaintiffs.[3]

## IV. *DISCUSSION*

Defendants raise three arguments in support of their Motion to Dismiss. First, Defendants contend that this court lacks subject matter jurisdiction over this controversy because Plaintiffs' claims are not ripe for adjudication. Second, Defendants claim that Plaintiffs, in alleging that they are severely cognitively impaired, have admitted that they lack capacity to sue under Federal Rule of Civil Procedure 17(b). Related to this argument is the Plaintiffs' conditional Motion to Add Parties. In the event that this court should agree with Defendants' position that Plaintiffs lack capacity to sue, Plaintiffs have requested leave to file a Second Amended Complaint for the purpose of adding Dora Johnson and Kathleen Craft as parties to this action. Finally, Defendants assert the defense of Eleventh Amendment immunity. The court will first turn to the issues

---

3. On October 31, 2000, Defendants did issue a form letter to all Alabama Assisted Living Facilities to inform them of the November 6, 2000 effective date of the new Rules. *See* Attachment to Defendants' Reply Brief. Under the heading "**FACILITIES REMAINING**

**AS REGULAR ASSISTED LIVING FACILITIES**," the letter stated that "[a] facility intending to remain a regular assisted living facility must begin consideration of how it will discharge those residents who are ineligible for continued stay due to dementia." *Id.*

relating to Plaintiffs' capacity to maintain this suit.

### A. *Plaintiffs' Capacity to Sue and conditional Motion to Amend Complaint to Add Parties*

■ A plaintiff's capacity to sue in federal district court is governed by state law. Fed.R.Civ.P. 17(b). In a typical case, the defendant must raise the issue of the plaintiff's capacity by specific negative averment in a responsive pleading or in a pre-answer motion. Fed.R.Civ.P. 9(a); *FDIC v. Calhoun*, 34 F.3d 1291, 1299 (5th Cir.1994). However, where lack of capacity appears affirmatively on the face of the complaint, specific averment is unnecessary. *Comstock v. Pfizer Retirement Annuity Plan*, 524 F.Supp. 999, 1002 (D.Mass.1981). Defendants have moved to dismiss Plaintiffs' First Amended Complaint on capacity grounds pursuant to Rule 12(b)(6).

Alabama law defines an "incapacitated person" as follows:

> Any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, physical or mental infirmities accompanying advanced age, chronic use of drugs, chronic intoxication, or other cause ... to the extent of lacking sufficient understanding or capacity to make or communicate responsible decisions.

*Ala.Code* § 26–2A–20(8).

■ Although it is not absolutely clear, it appears that a putative Alabama plaintiff can be determined by a court to lack capacity to sue despite the fact that such plaintiff has not been officially adjudicated incompetent. *Cf. Helton v. Helton*, 362 So.2d 257, 259 (1978) (noting that an official adjudication of incompetency is not necessary for a court to appoint a guardian ad litem to represent an incompetent person); *see Ala.Code* § 26–2A–1 Comment ("The broader definition [of incapacitated person in section 26–2A–20(8) ] permits

legal protection. commensurate with the person's capacity, without the stigma sometimes attached to a judicial decision of non compos mentis.").

Defendants' argument supporting dismissal on the grounds that Plaintiffs lack capacity to sue is based on logic rather than binding authority. On the one hand, Plaintiffs represent to this court that they are perfectly capable of maintaining this suit on their own behalf. On the other hand, Plaintiffs' First Amended Complaint is premised on the supposition that Plaintiffs are "severely cognitively impaired" under the Defendants' new Rules. Plaintiffs' facially contradictory positions beg the question: How can a severely cognitively impaired plaintiff be competent to bring suit on his or her own behalf? The answer to that question, at least for purposes of a Rule 12(b)(6) motion to dismiss, must be found in the body of Plaintiffs' First Amended Complaint.

■ Plaintiffs claim that Defendants have defined "severely cognitively impaired" so broadly that it will apply even to Plaintiffs. Implicit in this claim is Plaintiffs' belief that they are not severely cognitively impaired. Viewing the allegations in a light most favorable to the Plaintiffs, as is required by Rule 12(b)(6), it is not indisputably clear that Plaintiffs lack capacity to bring this suit. For example, *Ala.Admin.Code* § 420–5–4.08(5)(f), the new Rule in dispute, deems an Assisted Living Facility resident to be severely cognitively impaired "if he or she does not understand and cannot be trained to understand the unit dose medication system in use by the facility." *Id.* It is certainly within the realm of possibility, under the allegations of the First Amended Complaint, that Plaintiffs might be hopelessly befuddled by the "unit dose medication system," yet still be quite competent to bring this suit. Therefore, because there

exists a set of facts upon which Plaintiffs can be granted relief, Defendants' Rule 12(b)(6) motion is due to be denied. Plaintiffs' conditional Motion to Add Parties (doc. #8) is due to be denied as moot.

## B. *Ripeness*

Under Article III of the United States Constitution, federal judicial power is restricted to actual "cases and controversies." In addition to implicating a district court's jurisdiction, the concept of ripeness involves prudential considerations. *See Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler,* 789 F.2d 931, 940 n. 12 (D.C.Cir.1986) ("[E]ven when the constitutional minimum has been met ... prudential considerations may still counsel judicial restraint.").

The ripeness doctrine dictates that courts should decide only existing significant controversies, not hypothetical ones: "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements...." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Requiring ripeness also prevents unnecessary interference with legislative enactments and ensures that cases offer courts an "adequate record for effective review." *Kirby v. Siegelman,* 195 F.3d 1285, 1289–90 (11th Cir. 1999). It is precisely for these reasons that the Eleventh Circuit has held that pre-enforcement judicial review is "the exception rather than the rule." *Id.* at 1290. The Supreme Court has stated that in determining whether a case is ripe for adjudication two considerations are paramount: "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. 1507.

As for fitness of the issues, Plaintiffs request this court to hold that the Defendants' new Rules pertaining to the definition of severely cognitively impaired persons violate the ADA and the Due Process Clause of the Fourteenth Amendment as applied to the Plaintiffs. Yet it is undisputed that Defendants have taken no steps at all which directly impact the Plaintiffs. There has been no attempt on the part of the Defendants to assess Plaintiffs' eligibility or ineligibility for Assisted Living Facility residency under the new Rules. Moreover, Defendants have done nothing which indicates imminent or future removal of Plaintiffs from Sansing. Plaintiffs simply complain of a new state law which might apply to them. *See Goodman v. Parwatikar,* 570 F.2d 801, 805–06 (8th Cir. 1978) (refusing to reach the question of the constitutionality of a state statute authorizing the discharge of voluntarily committed mental patients where the patient in question had not been discharged under the statute and where there were no plans to do so in the future).

In *Texas v. United States,* 523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998), the Supreme Court addressed a declaratory judgment challenge to various provisions of the Texas Education Code requiring appointment of a master or management team to oversee poorly functioning school systems. The Court held that the suit lacked ripeness because no school had been affected by the disputed provisions. *Id.* at 300–02, 118 S.Ct. 1257. In its unanimous decision, the Supreme Court stated:

> The operation of the statute is better grasped when viewed in light of a particular application. Here, as is often true, '[d]etermination of the scope ... of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of judicial function.' *Longshoremen's v. Boyd,* 347 U.S. 222, 224, 74 S.Ct. 447, 448, 98

L.Ed. 650 (1954). In the present case, the remoteness and abstraction are increased by the fact that [the statute] has yet to be interpreted by the Texas courts. Thus, '[p]ostponing consideration of the questions presented, until a more concrete controversy arises, also has the advantage of permitting the state courts further opportunity to construe' the provisions.

*Id.* at 301, 118 S.Ct. 1257.

Here, as in *Texas,* this court is presented with a situation where the validity of a state law is being questioned in the absence of a clear dispute between the parties. In addition to the present adversarial void, which weighs heavily against this court's judicial power under Article III, this court considers the lack of any state court construction or application of the new Rules to be a prudential factor weighing in favor of a denial of ripeness.

The second ripeness consideration, "the hardship to the parties of withholding court consideration," counsels strongly in favor of dismissal at this time. To understand why, it is helpful to consider cases where the Supreme Court has found the existence of hardship sufficient to justify pre-enforcement entertainment of actions for injunctive and declaratory relief.

For example, in *Abbott Laboratories* the Food and Drug Administration ("FDA") promulgated a regulation requiring the inclusion of generic names for prescription drugs on all container labels as well as on various other printed materials. *Id.* at 137–39, 87 S.Ct. 1507. Violations of these FDA regulations could result in civil and criminal penalties. *Id.* at 153, 87 S.Ct. 1507. Various prescription drug manufacturers challenged the regulation as exceeding the FDA's authority. *Id.* at 139, 87 S.Ct. 1507. The Government took the position that the case was not ripe because none of the drug manufacturers had been prosecuted for violating the regulation.

The Supreme Court disagreed and found that the case was ripe for review.

In so holding, the Supreme Court emphasized the extreme hardships that the drug manufacturers would be subjected to absent immediate pre-enforcement review. The Court stated that:

> The regulations are clear-cut, and were made effective immediately upon publication; as noted earlier the agency's counsel represented to the District Court that immediate compliance with their terms was expected. If petitioners wish to comply they must change all their labels, advertisements, and promotional materials; they must destroy stocks of printed matter; and they must invest heavily in new printing type and new supplies. The alternative to compliance—continued use of material which they believe in good faith meets the statutory requirements, but which clearly does not meet the regulation of the Commissioner—may be even more costly. That course would risk serious criminal and civil penalties for the unlawful distribution of 'misbranded' drugs.

*Abbott Laboratories,* 387 U.S. 136, 152–53, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Similarly, in *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the plaintiff sought a declaratory judgment invalidating a state criminal trespass law even though the plaintiff had not been prosecuted under the state law. The plaintiff had twice been threatened with arrest if he did not stop distributing hand-bills protesting the Vietnam–War at a shopping center. *Id.* at 455–56, 94 S.Ct. 1209. On both occasions Plaintiff left the premises of the shopping center to avoid arrest, but one of his companions stayed behind and was arrested for violating the trespass law during their second visit to the shopping center. Plaintiff's declaratory judgment action was premised on the First and Fourteenth Amendments.

The Supreme Court found the matter to be ripe for review despite the fact that the plaintiff had not been prosecuted. The Court's decision was based on the undue hardship the statute placed upon the plaintiff. Either the plaintiff could insulate himself from prosecution by abandoning his pamphleteering or he could knowingly engage in conduct which subjected him to inevitable prosecution. The Court described the hardship as placing "the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel,* 415 U.S. at 462, 94 S.Ct. 1209.

In stark contrast to *Abbott Laboratories* and *Steffel* is the present case. Here, Plaintiffs have suffered no serious harm as a result of the Defendants' enactment of the new Rules. Plaintiffs have not been required to leave Sansing or to alter their daily lives in any way. In fact, the only hardship Plaintiffs allege is that they became "anxious and fretful" about the possibility of being moved against their will after being informed of such a contingency by Sansing's owner. Needless to say, this is not the type of hardship which supports a finding of ripeness.[4]

▉ After weighing the constitutional and prudential concerns which underlie the ripeness doctrine, this court concludes that, at this point in time, it would be inappropriate to take up Plaintiffs' case. The issues presented by the Plaintiffs are not presently fit for adjudication. More-

over, the hardship, if any, faced by Plaintiffs in biding their time is insubstantial. Given the assurances of Defendants that the new Rules will be refined so as to "reasonably resolve legitimate problems," it might very well be possible for the parties to avoid the court system entirely. *See National Treasury Employees Union v. United States,* 101 F.3d 1423, 1431 (D.C.Cir.1996) (The "unspoken element" of the ripeness doctrine is "if [the court] does not decide it now, [it] may never need to.").

## V. CONCLUSION

For the reasons discussed, Plaintiffs' conditional Motion to Amend Complaint to Add Parties is due to be DENIED as moot, and Defendants' Motion to Dismiss is due to be GRANTED.[5]

## ORDER

In accordance with the Memorandum Opinion entered on this date, it is ORDERED as follows:

1. The Motion to Dismiss (doc. # 5) filed by Defendants Donald E. Williamson and the State of Alabama Department of Public Health is GRANTED.

2. The conditional Motion to Amend Complaint to Add Parties (doc. # 8) filed by Plaintiffs Madie E. Brown and Vera M. Walker is DENIED as MOOT.

3. Plaintiff's First Amended Complaint is DISMISSED without prejudice for lack of jurisdiction.

---

4. Should Defendants attempt to remove Plaintiffs from Sansing, the new Rules require that Plaintiffs be given 30 days prior written notice. *Ala.Admin.Code* § 420–5–4.06(3)(f)(1)(x). This provision of the new Rules affords Plaintiffs protection from the hardships of immediate removal and gives Plaintiffs an adequate pre-discharge opportu-

nity to petition an appropriate state or federal court for relief.

5. Because the court finds that this case is not presently ripe for adjudication, it is unnecessary to address Defendants' remaining argument supporting dismissal.