# LETTISHA HENDERSON v.
# CITY OF ST. PAUL AND OTHERS.[1]

April 18, 1952.

No. 35,635.

[1]Reported in 53 N. W. (2d) 21.

354

*Drake, Drake & Schreiner,* for appellant.

*William M. Serbine,* City Attorney, and *Louis P. Sheahan,* Assistant City Attorney, for respondents.

THOMAS GALLAGHER, JUSTICE.

Action for a declaratory judgment adjudging (1) that a directive of defendant Forrest E. Conner, superintendent of schools of the city of St. Paul, issued December 2, 1949, abolishing the position of *supervisor of special classes* for the department of education of the city of St. Paul was violative of ordinance No. 8824, c. II, § 9-G, of the city of St. Paul[2] and hence null and void; (2) that the transfer of plaintiff, Lettisha Henderson, from her position of

---

[2]See, Proceedings of the Council of the City of St. Paul, 1946, pp. 587, 604.

*supervisor of special classes* to that of *principal of the Girls' Occupational School* constituted a demotion of plaintiff both as to salary and rank and hence was violative of M. S. A. 130.24 of the teachers tenure act; and (3) that defendants restore plaintiff to her former position of *supervisor of special classes*.

On February 1, 1951, after trial without a jury, the court found that the legal effect of the described transfer did in fact reduce plaintiff's salary and resulted in a demotion, and as conclusions of law the court ordered that plaintiff have judgment for the sum of $400[3] to compensate her for resultant loss of salary during the year 1950; that she be restored to her position as *supervisor of special classes* or given employment in some other position for which she is qualified at her former salary of $5,500 per year; and that she be continued thereafter at such salary on the city's payroll.

On March 15, 1951, in accordance with the aforesaid order of the court, the city of St. Paul, through its superintendent of schools, wrote plaintiff as follows:

"In compliance with the decision rendered by Judge McNally in the case of Lettisha Henderson vs. the City of Saint Paul, you are hereby assigned to the principalship of the Davis Elementary School, in which there are six teachers.

"This assignment shall be in addition to your present assignment as principal of the Crowley School, in which there are thirteen teachers, one full-time orderly, and a half-time nurse, all of whom, under Chapter II, Section 3-D of the School Code, make a total of fourteen and one-half persons in such school who shall be counted as teachers in determining the salary of a principal.

"This assignment will have the effect of placing you in the category of principals to whom are assigned twenty or more teachers, and will, therefore, entitle you to a scheduled salary as follows:

"Maximum salary for Bachelor's degree      $4500
($4200 plus $300 increase granted 1/28/51)

---

[3] By subsequent amendment of the conclusions of law, this amount was changed to $500, the amount actually lost. Plaintiff has been tendered this amount, and it does not otherwise appear to be in controversy now.

"Differential for special class certificate 100
"Differential for principalship of twenty or more
   teachers 1200
"Allowance for principal of two buildings 100
_____
"Total $5900

"This assignment is to be effective as of Monday, March 19, 1951."

Following receipt of the foregoing letter, plaintiff accepted the additional assignment "under protest and with full reservation of my legal rights," and since that time she has acted as principal of both the Crowley School and of the Davis Elementary School, with the attendant salary increase.

As *supervisor of special classes,* plaintiff was entitled to the sum of $500 per month for a minimum of 11 months per year, or the total sum of $5,500 per year. Actually, she had been working on a 12-month basis for the sum of $6,000 per year, although no obligation rested upon the city to provide her more than 11 months' employment per year. When she was transferred to the principalship of the Girls' Occupational School, the minimum service requirement was 10 months per year at $500 per month, or a total of $5,000 per year, but the terms of her transfer authorized her to work on an 11-month per year basis, so there would be no diminution in her salary.[4] It is undisputed that at the present time plaintiff is receiving the total sum of $6,225 per annum for a 10-month working period, and that, had she remained in her former position as *supervisor of special classes,* she would be receiving annually the sum of $6,187.50 for an 11-month working period.

On appeal, the following questions are presented:

(1) Was the directive of the superintendent of schools, issued December 2, 1949, purporting to abolish plaintiff's position as

_____
[4]The first year after such transfer plaintiff worked on a 10-month basis. The city, however, subsequently tendered her the additional $500, to which she was entitled, which she rejected. The trial court's judgment, as above set forth, made provision for payment to her of this amount.

*supervisor of special classes,* null and void as a violation of ordinance No. 8824, c. II, § 9-G, of the city of St. Paul, and M. S. A. 130.24 of the state teachers tenure act, and as not authorized or confirmed by the city council of St. Paul?

(2) Did the trial court err in failing to restore plaintiff to her former position after it found that her transfer resulted in a demotion as to salary?

(3) Did the court exceed its power in ordering that plaintiff be placed on the payroll of the St. Paul school system at an annual salary of $5,500?

Subsequent to the trial court's decision and defendants' compliance therewith, as evidenced by the superintendent's letter of March 15, 1951, and the facts recited above, defendants moved to dismiss this appeal on the ground that the occurrence of events after the trial and decision of the district court and the acceptance by plaintiff of the supplemental employment and increased salary had rendered moot all issues presented therein.

■ A study of ordinance No. 8824 of the school code or ordinances of the city of St. Paul and the facts disclosed by the record convinces us that the superintendent of schools was authorized to transfer plaintiff from her position as *supervisor of special classes* to another position for which she was eligible, provided the transfer did not involve a demotion in rank or a diminution of her salary.

While ordinance No. 8824, c. II, § 9-G, limits the power of the superintendent to abolish a position, c. I, § 4, subsection 5, thereof provides:

"Under the limitations of the State Teachers' Tenure Law as it exists or as it may be amended, *the Superintendent shall have power when necessary to transfer any member of the teaching corps from one position to another;* providing such employe is eligible to the position to which transfer is made, and providing that such transfer does not involve promotion or demotion in rank or alteration of salary." (Italics supplied.)

C. II, § 9-E, of said ordinance provides:

"In general, a change in work assignment shall not be considered as a demotion, if no reduction in salary is involved."

C. I, § 4, subsection 2, thereof further provides:

"The Superintendent shall be the sole person to nominate for elections to positions in the public schools, subject to the approval or rejection of the Commissioner of Education, all * * * principals, assistant principals, * * * subject to state regulations and to the provisions of the classified service of the City of St. Paul. He shall make all assignments throughout the system."

The record discloses that the transfer of plaintiff as made had the approval of the commissioner of education. This is required when a transfer involving a *promotion* in rank or salary is made. (Ordinance No. 8824, c. I, § 4, subsection 5.) It is clear from the foregoing that under the school ordinances of the city the superintendent was empowered to transfer plaintiff to another position of equal rank and salary for which she was eligible.

■ Reference to the state teachers tenure act (M. S. A. 130.22 to 130.32), relied upon by plaintiff, indicates that the transfer from one position to another of equal rank in a school system is proper thereunder and in conformity therewith. While § 130.24 of the act limits the power of a school board or commissioner to *discharge* or *demote* a teacher after completion of her probationary period, there is nothing in the act which limits or restricts their power to transfer a teacher from one position to another of equal rank where no diminution of salary is involved. As stated in State ex rel. Ging v. Board of Education, 213 Minn. 550, 569, 581, 7 N. W. (2d) 544, 555, 561:

"* * * The administrative officers of our school system should not, by judicial interpretation of the law, be converted into mere robots and deprived of all right honestly to determine matters of policy in the administration of school affairs.

* * * * *

"* * * Notwithstanding a teacher has acquired tenure status, he may be so transferred from class to class, or building to building, or division to division without a resulting 'discontinuance of position,' and without seeming loss of caste, provided he is not thereby demoted."

See, also, McSherry v. City of St. Paul, 202 Minn. 102, 277 N. W. 541.

■ It is clear from the foregoing ordinances and statutes that the sections thereof relative to the abolishment of position, the filing of charges, and the hearing of evidence in connection therewith are material only where it is determined that a teacher has been *discharged* from her employment or has been *transferred to a position involving a demotion in rank or salary.* Insofar as they relate to transfer to a position of equal rank and salary for which the person transferred is eligible, there is no requirement for the filing of charges or for hearings thereon. Ordinarily, such transfers are within the sound discretion of the school superintendent. See, State ex rel. Ging v. Board of Education, *supra.*

■ There remains for consideration, then, the question whether plaintiff's transfer as ultimately consummated following the trial court's decision resulted in her demotion in rank or salary. If not, it follows that her transfer is now valid, and the question of the abolishment of her former position is no longer in issue. The facts above recited establish that insofar as salary is concerned there is no demotion. She is now receiving a higher salary than she would have received had she remained in her former position.

With reference to the question of rank, ordinance No. 8824, c. II, § 9-E, provides that "a change in work assignment shall not be considered as a demotion, if no reduction in salary is involved." This in itself might be sufficient to establish that the transfer as ultimately consummated did not constitute a demotion in rank. But there is much additional evidence to establish this fact. A comparison of the specifications contained in ordinance No. 8824, c. I, § 12, relating to school principals, with those relating to supervisors contained in c. I, § 13, of said ordinance, indicates that the

position of principal is equal if not greater in rank than that of supervisor. Section 12, relating to principals, provides:

"C. The principal, under the supervision of the Superintendent of Schools and in accordance with policies established for the schools, shall be responsible for the detailed organization of the program of his school, for the assignment of duties to all members of his teaching staff, and for the administration of the official educational program. * * *

\* \* \* \* \*

"V. The principal, subject to the rules and regulations of the Department of Education and under the direction of the Superintendent of Schools is the administrative head of his building as the agent of the Superintendent of Schools and as such is in full control of his building and grounds, and is responsible for all activities carried on therein and thereon, except when the building is used for outside activities not under his jurisdiction."

Section 13, relating to supervisors, provides:

"A. The status of supervisors and supervising directors shall be in the main, that of staff officers to the Superintendent, and except as expressly authorized by the Superintendent of Schools, their administrative direction of school activities shall be exercised through the Assistant Superintendents, Directors, or the Principals.

\* \* \* \* \*

"C. In the absence of specific administrative rules to the contrary, the supervisors shall serve in an advisory capacity in the schools. When visiting in the schools, they shall cooperate with and advise with the principal of the school."

It may be fairly concluded from these sections that plaintiff's transfer from the position of *supervisor of special classes* to the principalship of two schools in the system did not constitute a demotion in rank.

Further evidence was presented on this issue in the form of testimony of defendant superintendent of schools that as *supervisor of special classes* plaintiff acted only in an intermediate capacity

under the director of elementary education and as an advisor to teachers as to technical phases of special classwork. He testified that the position of *supervisor of special classes* had been abolished in the interest of further progress for the system, and that the work formerly performed by plaintiff was being performed by a staff member without additional charge to the city. With respect to the abolishment of plaintiff's former position, he testified:

"* * * Now, operating on the general principle of a coordinated school system you don't need that intermediate supervision, because you have your trained teacher who is trained in the techniques of that—as a matter of fact, whose training is exactly the same as the supervisor. You have the overall direction, and that intermediate supervision can be removed and depend on the teachers for the technical phases of their work. * * * I find when we remove that intermediate supervision and depend upon the teachers for the technical phases of their work and advise on those technical phases, there is a tremendous increase in the morale of those teachers since we are depending on them for the exercise of their technical training and the independent judgments which they can make based upon that technical training. So there are two benefits. One is that if you remove the system of special supervision you can get a coordinated program which you can't get or which is more difficult to get under a system of supervision such as this; and the second is that you increase the morale of those special class teachers, and for that reason I am definitely opposed to the system of special class supervisors, special supervision in all areas, based on my experience, and for that reason I feel that it should be eliminated in order to get a generally coordinated program of education and to raise the morale of the teachers. For that reason I recommended this change."

Under the ordinances referred to and in the light of the testimony presented, it appears well established that the position which plaintiff now occupies is at least equal in rank and superior in salary to that of the position which she previously held; that defendants have fully complied with the judgment of the trial court; and that

their actions, as ultimately consummated, in transferring plaintiff to her present position are not violative either of the ordinances of the city of St. Paul or of the teachers tenure act.

These proceedings involve an action for a declaratory judgment. One of the essentials to the maintenance of such an action is the existence of a justiciable controversy or of a genuine conflict between opposing litigants. Such a condition does not appear to be present here. No legal right of plaintiff is now in jeopardy. The trial court correctly determined that the transfer as originally made constituted a demotion insofar as salary was concerned. It ordered that plaintiff be reinstated to her former position or to a position of equal rank and salary, and defendants have complied with this order. If plaintiff were to prevail on this appeal, defendants would be ordered to reinstate her to her former position, which carries a lower salary than the one she now receives. Defendants have submitted substantial evidence to support their actions in the abolishment of the position of *supervisor of special classes* and in the transfer of plaintiff to her present position. There is no evidence that they acted maliciously or were endeavoring to circumvent the protective features of the teachers tenure act or the governing ordinances of the city of St. Paul. Defendants have moved to dismiss the appeal on the ground that all the issues involved therein have become moot since their compliance with the order of the district court. It appears to us that the facts above recited adequately support them in this position. In that situation, there remains nothing before us for determination. The appeal, therefore, must be dismissed.

Appeal dismissed.