Max **ALLEN**, Relator,

v.

**BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 582, JASPER, MINNESOTA, Respondent.**

No. C2–88–1295.

Court of Appeals of Minnesota.

Jan. 31, 1989.
Review Denied April 19, 1989.

Douglas L. Skor, R. Ann Huntrods, Neal T. Buethe, Briggs and Morgan, P.A., St. Paul, for relator.

William P. Scott, Scott Law Offices, Pipestone, Kay Hunt, Minneapolis, for respondent.

Heard, considered and decided by SCHUMACHER, P.J., and PARKER, and STONE,* JJ.

## OPINION

SCHUMACHER, Judge.

Relator, a probationary superintendent and principal, was terminated by his employer, respondent Independent School District No. 582, Jasper Minnesota. Relator claims the Jasper School Board ("school board") did not follow the procedure for terminating probationary teachers outlined in Minn.Stat. § 125.12 subd. 3. Relator seeks review of the board's decision.

## FACTS

Relator Max Allen was hired in June 1986 by Independent School District No. 582 in Jasper, Minnesota. Allen's initial position was that of district superintendent and elementary school principal for the 1986–87 school year. Allen, age 53, had served for over thirty years as a public school teacher and administrator in Nebraska and South Dakota prior to arriving in Jasper.

Allen received three evaluations of his performance during the 1986–87 school year. Allen was rated on 24 different items on a scale of one to four, with four being the highest. The first evaluation, dated November 25, 1986, rated Allen at three or above on all items. In his second evaluation, dated February 9, 1987, Allen received three sub-three marks, and a third evaluation, undated, reflects an average score on the items at 3.09.

The school board renewed Allen's contract for the 1987–88 school year and gave him a $7,000 raise. Allen's affidavit indicates that the raise put him in line with other superintendents in the area, but did cause public controversy.

During the 1987–88 school year, it became evident that the school district was in very serious financial difficulty. At the beginning of the 1987–88 school year, the district was educating a total of 239 students, 110 of whom were enrolled in preschool through sixth grade.

The record contains a summary of an audit of the district done by Robert F. Danielowski, P.A., C.P.A. In an August 1, 1987 letter to Allen, Danielowski urged the district to take immediate action to reduce its current $163,000 negative balance. He recommended that a referendum be held and that the district trim its budget. A referendum seeking $180,000 was held and passed in October, 1987. In addition to other cuts, the district began consideration of a proposal that would permit the Jasper District to share a superintendent with the Edgerton School District. In April of 1988, the board approved budget cuts totaling $83,000.

The Jasper school board evaluated Allen once during the 1987–88 school year prior to the end of May, 1988. That evaluation is undated but the composite average of ratings fell from 3.09 on his final evaluation of the 1986–87 year to 2.47. There is also a note at the bottom of the evaluation from Darlene Steen, the chairperson of the school board, which reads:

I have had my own personal talk with Max. If anyone has any comments to make, I suggest they do so now!
    Thank-you,
        Darlene Steen

On May 11, 1987 Allen's attorney sent a letter to Steen advising her that the board had not followed the statutory procedures to terminate probationary teachers. Specifically, the board had not evaluated Allen three times that year as required by statute.

On May 17, 1987 at a school board meeting, Allen received his termination notice. The reasons for his termination were given as "the discontinuance of your position

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

(and the position of full-time Superintendent), the financial condition of the school district, and a decrease in enrollment." On May 27, 1988 a member of the school board handed Allen an envelope containing two undated evaluations.

In July, 1988, the Jasper School Board and the Edgerton School Board entered into a contract with Bill Richter, the superintendent of the Edgerton schools, under which terms Richter would serve as the superintendent for both districts. The Jasper district is responsible for one-half Richter's salary. The elementary school principal position was filled with someone working one-quarter time, for whom Jasper pays one-half the salary.

## ISSUES

1. Did the Jasper School Board violate Minn.Stat. § 125.12, subd. 3 by not providing Allen three evaluations at three different times of the school year?

2. Did the Jasper School Board abuse its discretion by basing its decision not to renew Allen's contract on arbitrary and capricious reasons?

## ANALYSIS

1. Allen's first education job in Minnesota was at Jasper. He was hired as a probationary teacher pursuant to Minn. Stat. § 125.12 subd. 1 and subd. 3. Minn. Stat. § 125.12, subd. 1 provides:

A superintendent, principal, supervisor, and classroom teacher and any other professional employee required to hold a license from the state department shall be deemed to be a "teacher" within the meaning of this section.

Minn.Stat. § 125.12, subd. 3 provides in relevant part:

The first three consecutive years of a teacher's first teaching experience in Minnesota in a single school district shall be deemed to be a probationary period of employment * * *.

Dismissal of a probationary teacher is also governed by statute.

The school board shall adopt a plan for written evaluation of teachers during the probationary period. Evaluation shall occur not less than three times each year. *During the probationary period any annual contract with any teacher may or may not be renewed as the school board shall see fit;* provided, however, that the school board shall give any such teacher whose contract it declines to renew for the following school year written notice to that effect before June 1. If the teacher requests reasons for any nonrenewal of a teaching contract, the school board shall give the teacher its reason in writing, including a statement that appropriate supervision was furnished describing the nature and the extent of such supervision furnished the teacher during the employment by the board, * * *.

Minn.Stat. § 125.12, subd. 3 (1986) (emphasis added).

The standard of review in the present case is limited. The decision to terminate a teacher under section 125.12 shall not be overturned unless that decision is arbitrary or is based on an erroneous theory of law. *Ganyo v. Independent School District No. 832,* 311 N.W.2d 497, 500 (Minn.1981). However, the present case does not involve termination of a teacher but instead, the non-renewal of a probationary annual contract. A school board has total discretion when deciding not to renew the contract of a probationary teacher.

[Section 125.12, subd. 3] states that during the probationary period any annual contract with any teacher may or may not be renewed as the school board sees fit, language which vests total discretion in the board with respect to renewal or nonrenewal of a probationary teacher's contract.

*Pearson v. Independent School District No. 716,* 290 Minn. 400, 402, 188 N.W.2d 776, 778 (1971).

The Minnesota Supreme Court has required that a school board follow statutory procedures if it chooses not to renew the contract of a probationary teacher.

We have expressed our reluctance to interfere, so long as the statutory procedures are followed, with a school board's

termination of a probationary teacher
* * *.

*Skeim v. Independent School District No. 115*, 305 Minn. 464, 473, 234 N.W.2d 806, 812 (1975). We therefore conclude that review by this court in the present case is limited to examining the board's compliance with section 125.12, subd. 3.

■ In the present case, the Jasper School Board was required to evaluate Allen "not less than three times each year." Minn.Stat. § 125.12, subd. 3 (1986). Allen was given three written evaluations during his first year and one written evaluation during his second year prior to receiving his nonrenewal notice.

In a case in which a school district did not renew the contract of a probationary superintendent, it was alleged that the district did not comply with that part of section 125.12, subd. 3 requiring the district to give its reasons for nonrenewal. *Shell v. Independent School District, No. 811*, 301 Minn. 442, 223 N.W.2d 774 (1974). In affirming the school board's decision the court said:

> where, as here, a probationary teacher's contract is not renewed, we hold that it is sufficient if there is substantial compliance with the statutory provision requiring reasons to be given.

*Id.* at 444, 223 N.W.2d at 774. In the present case, the school district substantially complied with the evaluation requirement in section 125.12, subd. 3.

■ 2. The board provided Allen with the reasons for his dismissal as required by section 125.12, subd. 3. The board told Allen that his nonrenewal was due to:

> the discontinuance of your position (and the position of full-time Superintendent), (sic), the financial condition of the school district and a decrease in enrollment.

Allen maintains that he was dismissed for arbitrary and capricious reasons. Allen cites no authority preventing a school district from refusing to renew an annual contract of a probationary teacher for arbitrary reasons. The language of the statute permits a district to renew or not renew a probationary teacher's contract "as the school board shall see fit." Minn.Stat. § 125.12, subd. 3 (1986).

DECISION

AFFIRMED.