**Shirley JOHNSON, Relator,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 281, Respondent.**

**No. C1–91–1282.**

Court of Appeals of Minnesota.

Dec. 31, 1991.

Review Granted Feb. 27, 1992.

Donald M. Lewis, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for relator.

Frank J. Madden, Pamela R. Galanter, Frank Madden & Associates, Eric J. Mag-

nuson, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and KALITOWSKI and FLEMING, JJ.

## OPINION

PARKER, Judge.

Shirley Johnson began employment with Independent School District No. 281 (district) on July 30, 1990, on a probationary basis as an elementary school principal. On January 2, 1991, the district placed her on administrative suspension, with pay and benefits, pending an investigation.

In March 1991 the district reassigned her to the district's central office as a "principal on special assignment." In May 1991 the school board terminated her contract effective at the end of the school year and decided not to renew her contract for the next school year.

In July 1991 Johnson filed a petition for writ of certiorari to this court. In August 1991 the court of appeals deferred a ruling on the district's motion to limit the issues on appeal. The court referred the motion to this panel, to be decided on the merits.

On appeal Johnson challenges the district's actions regarding her position. She alleges that in suspending and reassigning her and ultimately terminating her contract, the district failed to provide her with an adequate hearing under state law and federal constitutional law. We grant her petition for writ of certiorari.

## FACTS

In July 1990 the district hired Shirley Johnson as principal of the Meadow Lake Elementary School in New Hope. The position was for the 1990–91 school year. Her employment contract provided:

> The Board, and it hereby does, hire the Teacher to perform the duties connected with the position for Independent School District 281, commencing July 30, 1990, and continuing thereafter until terminated by law or as hereinafter provided.
>
> \*　　\*　　\*　　\*　　\*　　\*

Contract based on 44 weeks beginning July 30, 1990, as elementary principal of Meadow Lake Elementary School.

During the first few weeks of Johnson's employment as principal, teachers and staff expressed dissatisfaction with her job performance. In October 1990 the district provided Johnson with a formal notice of deficiency and probationary performance appraisal. The notice enumerated concerns regarding her performance. Johnson met with district officials and set forth in a written grievance what she believed to be misstatements in the notice of deficiency. In response, the district revised the notice to correct some inaccuracies. Unsatisfied with the notice, Johnson filed a grievance under the collective bargaining agreement.

On December 19, 1990, members of the Meadow Lake School staff met with the superintendent of schools and with other district administrators. The staff discussed concerns about Johnson's performance. As a result of the meeting, the district decided to investigate those matters of concern.

Several parents learned of the complaints against Johnson. On the day after the meeting, supporters of Johnson contacted parents of black and biracial students, asking them to join a group of parents who planned to visit Meadow Lake School on December 21, 1990. On that day, the group of parents visited the district's central office and met with administrators regarding alleged racial inequities in the treatment of children by Meadow Lake School teachers. After the meeting in the central office, the parents visited Meadow Lake School to support Johnson and to express concern regarding the alleged racial inequities. Media representatives were present at both visits.

On January 2, 1991, the district placed Johnson on administrative suspension, with pay and benefits, pending investigation into the December 21 incident. The notice of suspension that the superintendent sent to Johnson stated that the investigation related to the December 21 incident and to the concerns that arose at the December 19

meeting. On the day after the district suspended Johnson, the superintendent sent a letter to the parents of the children enrolled at Meadow Lake School. The letter stated:

First and foremost, the safety and security of all children and staff in District 281 has and will continue to be a top priority for my administration. We are committed to providing a safe and secure environment that fosters learning for all students. Any issue that interferes with the district's ability to provide such an environment goes against the district's mission and will not be tolerated.

The incident on December 21 involving a group of parents and the media is just such a situation. This unfortunate incident compromised the district's ability to control the learning environment and more importantly, jeopardized the students and staff members. In response to this incident and the ongoing situation at Meadow Lake, the district has taken several actions.

On Wednesday, January 2, Meadow Lake principal Shirley Johnson was suspended with pay pending the outcome of an investigation of the situation.

Johnson later declined the district's request for an interview pursuant to the investigation and filed a complaint of discrimination with the Equal Employment Opportunity Commission. She later declined to answer interrogatories pursuant to the investigation.

On March 5, 1991, the superintendent notified Johnson that she had been reassigned to the central office as a "principal on special assignment" and that the investigation had not been completed. The new assignment involved selecting and evaluating multicultural curriculum materials as well as establishing and maintaining a multicultural resource center. Johnson protested the new assignment and demanded that the district reinstate her as principal at Meadow Lake School.

On May 20, 1991, the school board adopted a resolution terminating Johnson's contract at the end of the 1990–91 school year and announcing the board's decision declining to renew her contract for the following academic year. The next day, the superintendent sent Johnson a notice entitled "Assignment and Notice of Non-Renewal." The notice informed Johnson of the resolution and that she was to continue in her present position until the end of the academic year.

After receiving notice of the resolution, Johnson requested that the district explain in writing the reasons why it did not renew her contract. The district responded by letter stating that the contract was not renewed because of "unsatisfactory performance." The district denied Johnson's request that the district provide a hearing concerning the nonrenewal of the contract.

## ISSUES

1. Did the district's suspension, reassignment and later termination of Johnson's contract implicate an interest protected by constitutional procedural due process requirements?

2. Did the district violate Minn.Stat. § 125.12 by suspending, reassigning and terminating Johnson without a hearing?

3. Did the district provide Johnson with adequate procedural safeguards pursuant to the suspension, reassignment and termination?

## DISCUSSION

### I

■ Procedural due process requirements "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). When government action implicates these protected interests, the aggrieved party is entitled to some kind of hearing. *Id.*

Johnson alleges that her suspension and reassignment, together with termination of her contract, implicated a liberty interest protectable by procedural due process principles. She asserts that the superintendent's letter to parents, the removal from

her position as principal and termination of her contract stigmatized her, affecting her ability to obtain future employment in her field as a principal. She claims that the district's actions mandated a hearing in which she could have cleared her name.

■ "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. In deciding whether a liberty interest is at stake, the court will inquire whether the governmental action imposed on the plaintiff "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* To establish a liberty interest, the plaintiff must show that the reasons for the discharge stigmatized him and that the government made those reasons public. *Hogue v. Clinton,* 791 F.2d 1318, 1322 (8th Cir.1986) (quoting *Payne v. Ballard,* 761 F.2d 491, 493 (8th Cir.1985)). Governmental action charging that the plaintiff merely failed to meet professional standards, however, does not impinge upon a liberty interest. *Norbeck v. Davenport Community Sch. Dist.,* 545 F.2d 63, 69 (8th Cir.1976).

■ Following the meeting involving parents and members of the media at the Meadow Lake School, the district suspended Johnson, with pay, pending an investigation. The district also sent a letter to parents of Meadow Lake students. The letter stated that "the safety and security of children and staff" were a top priority for the district and that it would not tolerate incidents which jeopardized its ability to provide an environment fostering such safety and security. The letter then characterized the meeting at the school as an "incident" that "jeopardized the safety of students and staff members." As a result of the incident, the letter stated, the district had suspended Johnson pending an investigation.

After the district sent the letter to parents, a Twin Cities newspaper reported that the district "[held] a news conference * * * to outline the allegations that led to her

suspension" and paraphrased the district's counsel as stating that the district questioned Johnson's judgment in allowing parents into the school, as well as her "failure to control the situation." Following the district's administrative reassignment, the district notified Johnson that the school board was terminating her contract at the end of the school year and had declined to renew it for the next year.

We believe that the district's published comments were sufficiently stigmatizing to implicate a liberty interest on Johnson's behalf. The letter to Meadow Lake parents essentially stated that Johnson had failed to control the meeting, endangering the students and staff at the school. Such a charge is likely to affect her ability to obtain future employment as a principal. The accusation that Johnson endangered others is significantly more stigmatizing than a mere charge that she failed to meet professional standards. Consequently, we hold that the district's actions gave rise to a need for appropriate procedural due process.

## II

Johnson next alleges that the district had a statutory duty to grant her a hearing pursuant to her suspension, reassignment and subsequent termination. We agree that, under the circumstances, Minn.Stat. § 125.12 (1990) required the district to provide Johnson a hearing:

> The first three consecutive years of a teacher's first teaching experience in Minnesota in a single school district shall be deemed to be a probationary period of employment. * * * During the probationary period any annual contract with any teacher may or may not be renewed as the school board shall see fit * * *. *The school board, may, after a hearing held upon due notice, discharge a teacher during the probationary period for cause, effective immediately, under section 123, subdivision 5.*

Minn.Stat. § 125.12, subd. 3 (emphasis added).

A school board has unfettered discretion when deciding whether to renew the contract of a probationary teacher. *Allen v. Board of Educ. of Indep. Sch. Dist. No. 582, Jasper, Minnesota*, 435 N.W.2d 124, 126 (Minn.App.1989), *pet. for rev. denied* (Minn. Apr. 19, 1989). Moreover, a probationary teacher has no right to a hearing under the statute when the school board declines to renew the contract. *Tatter v. Board of Educ. of Indep. Sch. Dist. No. 306*, 490 F.Supp. 494, 496 (D.Minn. 1980). The board, however, must grant a hearing to a probationary teacher who is discharged for cause during the period of the contract. *Pearson v. Independent Sch. Dist. No. 716*, 290 Minn. 400, 403, 188 N.W.2d 776, 778 (1971).

We believe that the section 125.12 provision required a hearing under the circumstances of this case, because the procedures used were tantamount to a termination for cause during the school year. There is no specific provision for probationary teachers who are suspended and reassigned during the probationary term. In this case, however, we conclude that the district's suspension and reassignment effected a de facto termination for cause of Johnson's position and not merely a refusal to renew.

Johnson's contract of employment established her rights as an employee of the district. It provided that she was employed as principal at Meadow Lake Elementary School for 44 weeks. Johnson's central office position carried significantly different duties from those of an elementary school principal. Consequently, in suspending and reassigning her in the middle of the school year, the district breached the employment contract. The board's subsequent termination of her contract constituted a ratification of the earlier action. The reassignment was, thus, the equivalent of a termination notice, ratified in May, during the school year.

Although the statute may not expressly provide for a hearing in these circumstances, we believe that to hold otherwise would produce an anomalous result. The statute affords a remedy for probationary employees in limited circumstances. Specifically, it protects probationary employees who are terminated for cause during the probationary period. The letter to parents setting forth the grounds for the suspension indicates that the suspension and reassignment *were* for cause.

The facts do not present a termination "effective immediately." We believe, however, that to provide public employees with a hearing only when they have been "terminated effective immediately" would allow school districts to circumvent the hearing requirement and do indirectly what could not be done directly. A district simply could reassign a principal and wait until the end of the school year to terminate for cause, thus avoiding the hearing requirement. We do not believe that the legislature intended such a result. While holding as we do, we emphasize that we do not suggest that the district used Johnson's suspension and reassignment deliberately to avoid the statutory hearing requirement. We hold only that a strict reading of the statute in this case would lead to an undesirable and, we believe, unintended result.

### III

We emphasize finally that because the writ of certiorari affords limited remedies, we restrict our review accordingly. Our inquiry is concerned only with procedural propriety. *See Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn.1981) (courts issue certiorari to review the proceedings of a tribunal exercising judicial or quasi-judicial functions). Consequently, we restrict our review to Johnson's suspension, reassignment and termination,[1] together with her procedural rights consequent upon the district's actions.

1. The district claims that Johnson's certiorari appeal did not meet the 60-day time requirement of Minn.Stat. § 606.01 (1990). However, as explained in section II above, we view the termination as a ratification of the earlier suspension and transfer actions and review them as orders essential to a final, reviewable order. Accordingly, we deny the motion to limit the issues on appeal.

Thus, we reach no question of damages in this case. The writ of certiorari does not extend to that subject, and Johnson must look to another form of action if she believes it necessary. *See Honn,* 313 N.W.2d at 414 (certiorari is proper "to redress obvious defects of justice for which no ordinary remedy is available"); *Sellin v. City of Duluth,* 248 Minn. 333, 339, 80 N.W.2d 67, 71 (1957) (courts' jurisdiction under certiorari is limited to review of the jurisdiction of the agency below, the regularity of its proceedings, and whether the decision below was arbitrary, unreasonable, oppressive, fraudulent or made under an erroneous theory of law or without any evidence to support it). We do note that although Johnson was suspended, reassigned and terminated, she was paid throughout the remainder of her contract year.

We also lack jurisdiction to decide whether the district should reinstate Johnson to her original position. The school year, along with Johnson's probationary period, is over. The district had unquestioned statutory authority to decline to renew her contract. *See* Minn.Stat. § 125.12, subd. 3 (1990). Because the district lawfully declined to renew her contract, she has no claim to reinstatement in her previous position.

The district alleges that it complied with due process requirements by offering Johnson repeated opportunities for an interview after the suspension. She answers that mere opportunities to be interviewed by the district do not rise to the level of requisite due process under the circumstances of this case. We agree with Johnson that the district did not afford her adequate due process.

The specific requirements of procedural due process are flexible. *See Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). At a minimum, due process requires notice and something less than a full evidentiary hearing prior to adverse governmental action. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) (quoting *Mathews,* 424 U.S. at 343, 96 S.Ct. at 907). In deciding what process is due, we must consider

the private interest that will be affected by the official action; * * * the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. A pre-deprivation opportunity to respond, coupled with post-deprivation administrative procedures and judicial review, may satisfy the due process hearing requirements. *Loudermill,* 470 U.S. at 547–48, 105 S.Ct. at 1496.

The United States Supreme Court and the Eighth Circuit Court of Appeals have required name-clearing hearings in which a plaintiff deprived of a liberty interest could confront and refute stigmatizing charges. *See Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12 ("the purpose of such notice and hearing is to provide the person an opportunity to clear his name"); *Wellner v. Minnesota State Junior College Bd.,* 487 F.2d 153, 156 (8th Cir.1973) (holding that plaintiff had a right to a hearing in which to refute stigmatizing charges of racism).

We believe that the hearing to which Johnson is entitled requires that it be public and that she have an opportunity to present evidence. Further, in view of the public nature of this dispute and in the interest of preserving public confidence in the public school system, we recommend that the board retain an independent hearing examiner. An independent hearing officer could conduct the hearing and make a recommendation to the board based on evidence adduced. Such a hearing would afford Johnson adequate due process by affording her an opportunity, not to recover damages, but to clear her name and restore her professional reputation. It has long been recognized:

Who steals my purse steals trash; 'tis something, nothing;

'Twas mine, 'tis his, and has been slave to thousands.

But he that filches from me my good name

Robs me of that which not enriches him,

And makes me poor indeed.

William Shakespeare, Othello act III, sc. iii (*The Complete Works of William Shakespeare*, Spring Books 1958).

## DECISION

We hold that the district's actions with regard to its suspension, reassignment and subsequent termination of Johnson's contract were sufficiently stigmatizing as to implicate a constitutionally protected liberty interest. We hold that the district's actions require a hearing under Minn.Stat. § 125.12. We further hold that the district must provide Johnson with a hearing in which she has an adequate opportunity to confront publicly the stigmatizing charges against her.

Petition for writ of certiorari granted.

FLEMING, J., dissents.*

FLEMING, Judge (concurring in part, dissenting in part).

I concur with the majority holding that relator has no claim to reinstatement in her previous position and that having been fully paid all wages and benefits for the contract year, she has no claims for damages as a result of her suspension, reassignment, termination and refusal to renew her probationary position.

I respectfully dissent in respect to the majority decision that the suspension, reassignment and subsequent termination of relator's contract were sufficiently stigmatizing as to implicate a constitutionally protected liberty interest requiring a hearing under Minn.Stat. § 125.12 (1990).

Having concluded that the termination of her contract was already effective, with no remaining claim for damages resulting from the termination, I can find no authority permitting or requiring review by writ of certiorari.

A clear reading of Minn.Stat. § 125.12 seems to me to indicate that the legislature did not intend to provide for a hearing before the school board as a condition of suspending or reassigning a teacher during her probationary period. In any event, I do not believe that this court has the jurisdiction to address the suspension or the reassignment because the writ of certiorari was untimely sought and issued.

Minn.Stat. § 606.01 (1990), specifically governing writs of certiorari, provides:

No writ of certiorari shall be issued, to correct any proceeding, unless such writ shall be issued *within 60 days after the party* applying for such writ shall have *received due notice* of the proceedings sought to be reviewed thereby.

(Emphasis added.) This 60-day time period for issuance of the writ cannot be extended by consent of the parties or by court action. *See* Minn.R.Civ.App.P. 126.02; *Kenzie v. Dalco, Corp.*, 309 Minn. 495, 497, 245 N.W.2d 207, 208 (1976).

In this case, relator received notice of suspension on January 4, 1991. She received notice of her reassignment as principal on special assignment on March 15, 1991. The writ of certiorari issued on July 18, 1991 was clearly more than 60 days after the actions relator seeks to have reviewed by this court took place. Accordingly, I would have granted the motion of the respondent to have limited review to only the issue of the termination and nonrenewal of relator's probationary contract, which occurred on May 20, 1991.

The majority attempt to avoid the operation of Minn.Stat. § 606.01 by concluding the school board's subsequent termination and nonrenewal of relator's contract on May 20, 1991 somehow acted as a ratification of the suspension action of January 4, 1991 and the reassignment of March 5, 1991, and thus the 60-day clock on the prior actions did not begin to run until the May 20 action.

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

I submit that there is no support in the record for this conclusion. To the contrary, the record supports the district's contention that relator's position as a principal had never been terminated until the board's action of May 20, 1991.

Nowhere in the record is there any prior action "immediately" terminating relator's position. Only in the event of an "immediate" termination was the relator entitled to a hearing during the probationary period under Minn.Stat. § 125.12.

I can find nothing in the return on writ of certiorari, which makes up the record herein, that indicated any action by the board to ratify any prior actions of the school administration in respect to the suspension or reassignment of relator.

If the majority is correct, and I do not agree that they are, that the reassignment in March did in fact constitute an *immediate termination* which would have afforded relator a hearing under Minn.Stat. § 125.12, then certainly it was incumbent upon her to have sought a writ of certiorari within the statutory 60 days of that action.

Assuming the writ was timely issued to permit review of the suspension and reassignment, I would nevertheless be required to find this probationary employee not entitled to a hearing under Minn.Stat. § 125.12 because she was not "immediately terminated" during the period of probation.

When suspended on January 2, 1991, she was advised "the administration suspension is not disciplinary or punitive in any way. As noted above you will continue to receive full pay and benefits during the Administration suspension." Clearly this action cannot be inferred to be an *immediate* termination.

When reassigned on March 5, relator was again advised that the reassignment was not disciplinary and that full salary and benefits would continue. This action, to me, is certainly inconsistent with an *"immediate termination."*

In my opinion, relator was, in any event, afforded full due process and was given more than ample opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) (stating that assessing the sufficiency of due process, the important inquiry is whether the plaintiff had an opportunity to present her side of the story before the governmental action was taken). She was invited and urged to participate in the investigation by appearing with her counsel and she chose not to do so. She also refused to respond to written interrogatories even though that method of getting her input had been suggested by her counsel.

In my view, the investigation undertaken by the school district was appropriate and within its discretion in managing the school's business. I do not see how relator can claim rights she would not otherwise have enjoyed by refusing to participate in the investigation.

I do not believe the record before us establishes that relator has been stigmatized. I do not agree that one can draw a logical inference from the district's letter to the parents on January 3, 1991 that the district was accusing relator of failing to control the meeting or of endangering the students or the staff at the school. As to relator, the letter said only that she was being suspended with pay pending an outcome of an investigation.

Once the district determined to undertake an investigation related to the December 1990 incident, its decision to suspend relator would appear to be beyond challenge. Suspension with pay is a commonly used procedure.

Having determined to do so, the action could hardly have been done in secret. Having in mind the unrest at the Meadow Lake School and the parent participation in the December incident, it would appear to me that the board had no alternative but to communicate with the parents to advise them what has happening.

I do not understand what our requiring the board to hold a hearing will accomplish. We have already said they need not reinstate her. Minn.Stat. § 125.12 does not appear to address the school board authority to hold hearings except as it relates to employment status.

As concerns relator's good name, the district, at the time of suspension and reassignment, emphasized the actions were not disciplinary or punitive. I am not sure that a hearing can do more than that.

I would order that the writ of certiorari be discharged.