**Shirley JOHNSON, Respondent,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 281, Petitioner, Appellant.**

No. C1–91–1282.

Supreme Court of Minnesota.

Dec. 31, 1992.

Eric Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, Frank Madden, Pamela R. Galanter, Frank Madden & Associates, Plymouth, for appellant.

Donald W. Lewis, Andrew H. Seitel, Popham, Haik, Schnobrich & Kaufmann, Ltd., Minneapolis, for respondent.

Dale G. Swanson, Minnesota Elementary School Principals' Ass'n, Dale G. Swanson Law Office, Forest Lake, Minnesota School Boards Ass'n, Gloria B. Olson, Diane M. Cornell, Minnesota Educ. Ass'n, Harley M. Ogata, Roger L. Barrett, Christina L. Clark, St. Paul, for amicus curiae.

COYNE, Justice.

On May 21, 1990, Independent School District No. 281 gave Shirley Johnson, a probationary teacher, written notice that on May 20, 1990 the school board had resolved not to renew her contract for the following school year. The writ of certiorari was issued July 18, 1990. Nevertheless, the court of appeals treated Ms. Johnson's petition as if the writ had not issued and as if she sought extraordinary relief, such as that provided by a writ of prohibition or mandamus. The court of appeals then held that although Johnson had no claim to reinstatement because the school district had unquestioned statutory authority pursuant to Minn.Stat. § 125.12, subd. 3 (1990) to decline to renew her contract, the school district was, nevertheless, required to grant Johnson a hearing, which the court of appeals recommended be conducted by an independent hearing examiner. *Johnson v. Independent School District No. 281*, 479 N.W.2d 392 (Minn.App.1991). We reverse.

The current dispute arises out of these events:

Independent School District No. 281 engaged Shirley Johnson as a probationary teacher for the 1990–91 school year at an annual salary of $56,126.00. The contract stated that it was "based on 44 weeks beginning July 30, 1990 as elementary principal at Meadow Lake Elementary School on MA + 60, step 1 (26–pay option)."

The employment of teachers,[1] their contracts and the termination of those contracts are governed by Minn.Stat. § 125.12 (1990), which provides at subdivision 3 for a probationary period of employment. Pursuant to subdivision 3, a school district must adopt a plan for written evaluation of teachers during the probationary period, and evaluation must occur at least three times each year for a teacher performing services on 120 or more school days. On October 18, 1990 the school district gave Ms. Johnson its first written evaluation of her performance, accompanied by a notice of deficiency from Don Wagner, director of elementary education. Although the evaluation indicated that Ms. Johnson had met major expectations in many respects, the evaluation also stated that she needed improvement in one area and immediate improvement in five areas. A discussion of the deficiencies was set out in the four page single-spaced notice of deficiency.

The performance appraisal was discussed at a meeting on October 22, 1990 attended by Shirley Johnson, Don Wagner, and Gwen Martinson, the director of special education. A second meeting was held on November 5, 1990, with Ms. Johnson; Mr. Wagner; Ann Eilbracht, director of human resources; and Donald Lewis, Ms. Johnson's lawyer.

Ms. Johnson took exception to several items in the appraisal and notice of deficiency. In a written memorandum dated November 14, 1990, provided at Mr. Wagner's request, Ms. Johnson enumerated and discussed those items in the deficiency notice that she contended were misstatements. The discussion was prefaced by this statement: "This letter also constitutes my submission of a grievance pursuant to the school district's collective bargaining agreement with the Principals' Association, as well as my demand that the false, inaccurate, and misleading statements be expunged from my personnel records."

On December 4, 1990 Mr. Wagner responded to Ms. Johnson's grievance, providing a copy of a revised notice of deficiency dated October 18, 1990 and notifying her that the original notice had been removed from her personnel file. On December 21, 1990 Ms. Johnson filed a second level grievance with the superintendent of schools, asserting the inadequacy of the revision of the October notice of deficiency and requesting that both original and revised notices of deficiency and the probationary principal performance appraisal be expunged from her personnel file.

1. Minn.Stat. § 125.12, subd. 1 (1990) provides that a "principal * * * shall be deemed to be a 'teacher' within the meaning of this section."

In the meantime, however, on December 19th, the district superintendent of schools and a group of about 40 members of the teaching and administrative staff of Meadow Lake Elementary School met to discuss their concerns about Ms. Johnson's performance as principal. As a result of this meeting, the superintendent initiated an investigation which was to begin on December 21, 1990. Although Ms. Johnson was neither invited to the meeting nor notified of it, word of it was somehow disseminated among the parents of minority pupils. On December 21st, the day the investigation ordered by the superintendent was to begin, a group of parents appeared at the district central office; after a brief meeting with district administrators concerning perceived racial inequity in the treatment and education of their children, the group moved to Meadow Lake Elementary School—in both instances accompanied by members of the news media. According to Ms. Johnson the visit at the school was an orderly show of support for her leadership of the school and her efforts on behalf of their children. The school district, on the other hand, contends that the visitors' "loud and angry" voices frightened the school children and caused teachers to fear for their pupils' safety.

On January 2, 1991 the school district suspended Ms. Johnson with full pay and benefits pending the outcome of an investigation of her performance as principal and of the December 21st incident at Meadow Lake Elementary School. The notice of suspension included advice that the administrative suspension was not in any way disciplinary or punitive. The following day the superintendent notified the parents of children attending Meadow Lake Elementary School of the school district's concerns and priorities and its response to the December 21st incident at the school. The substance of the superintendent's letter is contained in the following lengthy excerpt:

First and foremost, the safety and security of all children and staff in District 281 has and will continue to be a top priority for my administration. We are committed to providing a safe and secure environment that fosters learning for all students. Any issue or situation that interferes with the district's ability to provide such an environment goes against the district's mission and will not be tolerated.

The incident on December 21 involving a group of parents and members of the media is just such a situation. This unfortunate incident compromised the district's ability to control the learning environment and more importantly, jeopardized the safety of students and staff members. In response to this incident and the ongoing situation at Meadow Lake, the district has taken several actions.

On Wednesday, January 2, Meadow Lake principal Shirley Johnson was suspended with pay pending the outcome of an investigation of the situation. Effective immediately, Don Wagner, director of elementary education, will assume the responsibilities of principal at Meadow Lake pending the outcome of the investigation.

The district is also taking action in response to the concerns expressed by parents during the December 21 meeting. A meeting is being scheduled with the group and the district's multicultural education task force to gather further information and to address their concerns.

On her lawyer's recommendation, Ms. Johnson rejected the school district's repeated requests for an interview. The school district contended the interview was necessary to complete its investigation. Finally, on February 19, 1991, after Ms. Johnson formally requested reinstatement as principal of Meadow Lake Elementary School and filed a charge with the Equal Employment Opportunity Commission alleging that her suspension was the result of racial discrimination, Ms. Johnson's lawyer advised the school district that Ms. Johnson was willing to provide written response to written questions regarding matters relevant to the investigation. The school district submitted written questions, but after reviewing them, Ms. Johnson declined to answer them.

On March 5, 1991 the school district ended Ms. Johnson's paid suspension and reassigned her as a "principal on special assignment" pending the outcome of the investigation. Following Ms. Johnson's refusal to be interviewed or to submit answers to written questions, the school district brought the investigation to a close and on April 8, 1991 issued its report, detailing the investigative process and making findings critical of Ms. Johnson's administration of Meadow Lake Elementary School.

A second probationary principal performance appraisal covering the period from October 19, 1990 to December 21, 1990 had been prepared and Mr. Wagner, Ms. Johnson and Ms. Eilbracht met to review the evaluation. Ms. Johnson declined to discuss the evaluation; three weeks later she returned the appraisal with the notation that her signature only acknowledged receipt of the appraisal, that she categorically denied all "negative charges", and that she believed the "appraisal reflect[ed] the retaliation and discrimination that School District 281 and its representatives have subjected me to during the 1990–91 school year."

On May 13, 1991 Ms. Johnson, Barbara Nemer, director of curriculum and media services, to whom Ms. Johnson reported while working as a principal on special assignment, and Jackie Fraedrich, coordinator of multicultural education and director of Indian education, met to review the third periodic review of Ms. Johnson's performance as a probationary principal; this time the review was of her performance as a principal on special assignment. Ms. Johnson objected to the meeting, complaining that she was being subjected to "intense scrutiny" and asked for five days to review the evaluation. Refusing to attend a subsequently scheduled meeting, Ms. Johnson gave Ms. Nemer a note containing the statement, "I'm convinced your assignment is to build a case against me."

On May 21, the clerk of the school board served Johnson with formal notice of the school board's declination to renew her contract for the following school year. On the same day the superintendent of the school district notified Ms. Johnson of the school board's action and also informed her that Ms. Johnson should continue in her current assignment as principal on special assignment for the remainder of the 1990–91 school year.

On July 18, 1991 Ms. Johnson interposed her petition for a writ of certiorari to review the school board's decision not to renew her contract; to review her suspension and reassignment without a hearing; for reinstatement; and for income lost during the 1991–92 school year and thereafter to the conclusion of the litigation. The writ issued that same day for review of the May 20, 1991 decision of the board of education of Independent School District No. 281.

Although it acknowledged that the school district had lawfully declined to renew Ms. Johnson's contract and that she had no claim to reinstatement, the majority opinion of the court of appeals nevertheless declared that Ms. Johnson's suspension and reassignment effected a de facto termination during the probationary period so that the hearing provided by Minn.Stat. § 125.12, subd. 3 (1990) for mid-year contract termination was required; that the decision not to renew Ms. Johnson's contract constituted a ratification of the de facto termination; that the January 2, 1991 letter to parents of Meadow Lake Elementary School pupils stigmatized Ms. Johnson, thereby implicating a liberty interest; and that due process requires that Ms. Johnson be afforded the opportunity to restore her professional reputation in a public hearing conducted by an independent hearing officer.

▪ As the court of appeals recognized, Minn.Stat. § 125.12, subd. 3 (1990), provides that the contract of a probationary teacher may or may not be renewed "as the school board shall see fit." The statute does not require a hearing but only requires the school board to give the teacher written notice before June 1st of its declination to renew his or her contract for the following year. Only if a teacher is discharged during the probationary period for cause, effective immediately, is a hearing required. *Id.* The court of appeals deter-

mined that suspension with full pay and benefits, accompanied by the advice that it was an administrative suspension which was in no way disciplinary or punitive, terminated Ms. Johnson's contract for cause, effective immediately, thereby necessitating a hearing pursuant to section 125.12, subd. 3. That determination simply flies in the face of the record.

Neither can Ms. Johnson's subsequent reassignment as principal on special assignment be characterized as a discharge effective immediately. Following her reassignment Ms. Johnson worked for the entire remainder of the term of her contract for the full salary and benefits provided by that contract. The school district asserts that Ms. Johnson's reassigned position was at the same organizational level as her position as principal of Meadow Lake Elementary School and that her status as an administrator was unchanged. *Henderson v. City of St. Paul*, 236 Minn. 353, 359, 53 N.W.2d 21, 25 (1952) (transfer to a position of equal rank and pay is ordinarily within the sound discretion of the school superintendent). But even if, as Ms. Johnson alleges, the reassignment was a demotion, nothing in the governing statute requires a hearing.

Nor do we discern any legislative intent to require a hearing on either administrative suspension or reassignment. Minn. Stat. § 125.17 (1990), the teacher tenure statute applicable to teachers in the public schools in cities of the first class provides, like section 125.12, subd. 3, that the contract of a probationary teacher may or may not be renewed "as the school board shall see fit." Unlike section 125.12, however, section 125.17, subd. 2 goes on to provide that the school board may, during the probationary period, "discharge or demote a teacher" for cause. All that is required is that written notice of the cause be given the teacher at least 30 days before the discharge or demotion is to become effective, and the teacher has no right of appeal. Subdivision 10 of section 125.17 sets out provisions regarding suspension and salary in the event charges are filed against a teacher.

Inasmuch as suspension, demotion and discharge of probationary teachers in the public schools of cities of the first class have all been addressed in section 125.17, the absence of provision with respect to suspension and demotion in section 125.12 can hardly be regarded as an oversight. The differences between these two frequently amended teacher tenure acts—the one, Minn.Stat. § 125.17, applicable to cities of the first class and the other, Minn. Stat. § 125.12, applicable to all other school districts, including Independent School District No. 281—can only be regarded as differences intentionally provided to meet somewhat differing requirements and conditions.

■ Finally, if either the suspension on January 2, 1991 or the reassignment on March 5, 1991 had actually constituted a discharge, effective immediately, then Ms. Johnson's July 18th petition for a writ of certiorari would have been untimely. Minn.Stat. § 606.01 (1990) provides that a writ of certiorari "shall be issued within 60 days after the party applying for such writ shall have received notice of the proceeding sought to be reviewed thereby." A timely writ is a "jurisdictional prerequisite to judicial review." *Roseville Education Ass'n v. Independent School District No. 623*, 391 N.W.2d 846, 849 (Minn.1986). Ms. Johnson argues that the writ is timely for review of these actions because the school board ratified them when it decided on May 20, 1991 not to renew her contract, but nothing in the record suggests that the school board reviewed or even considered ratification of these earlier actions by the superintendent of the school district. The school board only decided not to renew Ms. Johnson's contract.

Moreover, a writ of certiorari is timely only if issued within 60 days after the challenged action, not within 60 days after some claimed subsequent approval of the action. If the harm suffered by a petitioner is to be redressed through review on certiorari, the writ must have issued within 60 days of notice of the adverse action.

■ It may be that because Ms. Johnson's suspension and subsequent reassign-

ment prevented her from carrying out her undertaking to serve as principal of Meadow Lake Elementary School, the school district could be said to have breached its contract. While that question might have been grieved or addressed in an action for breach of contract (although damages would seem highly speculative), it is not before us on review by certiorari. Ms. Johnson has already filed charges of racial discrimination with the EEOC, and other avenues of recourse are available for individuals who allege racial discrimination. Finally, Ms. Johnson asserts that the school district's statements concerning the December 21, 1990 incident at Meadow Lake Elementary School stigmatized her, implicating her liberty interest, and violated her right to due process. We have observed on an earlier occasion that a teacher claiming a right of constitutional protection of a liberty interest "must bear the burden of proof that [s]he has a constitutionally protected interest." *Setty v. Minnesota State College Board*, 305 Minn. 495, 498, 235 N.W.2d 594, 596 (1975). Here there is no proof of record; Ms. Johnson seeks to try that issue on appeal. But this court does not make findings of fact on review by certiorari. From a legal standpoint none of the statements suggests dishonesty or immorality (the kinds of statements which have been identified as stigmatizing).[2] The worst that can be said of them is that they question Ms. Johnson's judgment and professional competence. But it has been held that discharge on grounds of poor performance, poor judgment, incompetence, unsatisfactory performance, or even insubordination is not stigmatizing. *E.g., Nathanson v. United States*, 630 F.2d 1260, 1264 (8th Cir.1980), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983); *Elkin v. Roudebush*, 564 F.2d 810, 813 (8th Cir.1977); *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir.1976); and *Ventetuolo v. Burke*, 596 F.2d 476, 483 (1st Cir.1979). On the record before us we cannot hold that the school district violated a constitutionally protected liberty interest. Even if we assume arguendo that nonrenewal of

her contract as principal makes her less desirable to other employers, her eligibility for such other employment is not foreclosed. *Setty v. Minnesota State College Board*, 305 Minn. 495, 235 N.W.2d 594 (1975). If, as Ms. Johnson contends, the statements were false, the common law may afford a vehicle for the "name-clearing hearing" which she seeks.

Reversed.

WAHL, Justice, dissenting.

I respectfully dissent. Even a probationary teacher is entitled to due notice and a hearing, under Minn.Stat. § 125.12, subd. 3 (1990), when a "discharge * * * during the probationary period for cause, effective immediately * * * " occurs. Shirley Johnson was "immediately discharged" from all her duties and responsibilities as principal of Meadow Lake Elementary School, summarily suspended for 68 days, then reassigned to duties lesser and not comparable to those of an elementary school principal. Amicus Curiae Minnesota Elementary School Principals' Association properly asserts that the "extraordinary circumstances alleged to warrant removal of a * * * principal from her position, duties and responsibilities during the term of an annual probationary contract must be * * * subjected to an adversary hearing."

The majority states that Johnson was not discharged from her job since she "worked for the entire remainder of the term of her contract for the full salary and benefits provided by that contract." She did not work, however, at the job of being principal of an elementary school but performed vague, specially created duties as a "media specialist." Furthermore, nothing in Minn. Stat. § 125.12, subd. 3 suggests that a probationary teacher must be completely severed from a school district before hearing rights attach. When Johnson was suspended and then reassigned by Robbinsdale, never to return as principal of Meadow Lake or any other Robbinsdale elementary school, she was effectively discharged from the job for which she had contracted and

---

**2.** *See Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

thus entitled to a subdivision 3 hearing. Any other reading of the statute would allow a school district to avoid the hearing requirements by simply reassigning a probationary teacher to any position within the district, no matter how undesirable or far removed from teaching responsibilities the reassignment may be, so long as salary and benefits remained unchanged. The district then need only not renew the contract at the end of the year. The plain meaning of the statute does not suggest that the legislature intended this result.

The majority goes on to state that even if the suspension or reassignment constituted a discharge, Johnson's July 18th petition was untimely. I cannot agree. This court has long held that certiorari will not lie unless a final determination of rights has been made. *State ex rel. Mosloski v. County of Martin,* 248 Minn. 503, 506, 80 N.W.2d 637, 639 (1957). A writ will not issue to prevent an anticipated wrong. *Id.* While Johnson was effectively discharged by her removal as an elementary school principal, her right to a hearing did not mature until she was notified that the reassignment was permanent.

Communications between Johnson and the superintendent were too indefinite to give rise to an appealable decision before May 21. When Johnson was notified, by letter of January 2, that she was being placed on suspension while the district investigated staff complaints against her, the superintendent advised her that the "administrative suspension is not disciplinary or punitive in any way," and that the suspension was effective only until the investigation was completed. The investigation was expected to be completed within three weeks. When Johnson was notified, by letter of March 5, that she was being reassigned as Principal on Special Assignment, the superintendent assured her that the reassignment was not disciplinary and led her to believe that it was temporary since it would be "reevaluated upon conclusion of the investigation." Only after the Board voted not to renew Johnson's contract did the superintendent notify Johnson that the investigation was completed and that her reassignment was permanent. Thus, a final, appealable determination of Johnson's contractual rights was not communicated to Johnson until the superintendent's letter of May 21st. Johnson filed her writ on July 18th, within the 60 day statutory period.

Whether or not the board actually reviewed or officially considered the superintendent's earlier actions, it is clear that the board knew of the suspension and reassignment and acquiesced in or ratified the superintendent's prior course of action concerning Johnson at least by the time it affirmatively voted on the superintendent's recommendation not to renew Johnson's contract. The board's ratification is implicit in the fact that the superintendent gave Johnson both the notice of contract nonrenewal required by section 125.12, subd. 3, and the notice of permanent reassignment in the same letter, dated May 21, the day following the board meeting. This notice provided finality to the superintendent's earlier actions terminating Johnson "effective immediately" from her duties and responsibilities as elementary school principal. The writ was, therefore, timely filed. I would affirm the court of appeals and hold that under these circumstances Johnson is entitled to a hearing under Minn. Stat. § 125.12, subd. 3 (1990).